# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-60116

United States Court of Appeals
Fifth Circuit

**FILED**
June 27, 2017

Lyle W. Cayce
Clerk

KENNEDY BREWER

      Plaintiff - Appellant

v.

STEVEN TIMOTHY HAYNE; MICHAEL H. WEST,

      Defendants – Appellees

Consolidated with No. 16-60342

LEVON BROOKS

      Plaintiff - Appellant

v.

STEVEN TIMOTHY HAYNE,

      Defendant - Appellee

Appeals from the United States District Court
for the Southern District of Mississippi

Before HIGGINBOTHAM, JONES, and HAYNES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

No. 16-60116
Cons. w/ No. 16-60342

In 1992, Plaintiff Levon Brooks was convicted of the murder of three-year-old Courtney Smith. In 1995, Plaintiff Kennedy Brewer was convicted of the murder of three-year-old Christine Jackson. When one Justin Albert Johnson later confessed to both crimes, the convictions of Brooks and Brewer were vacated. Each then sued Dr. Steven Hayne and Dr. Michael West, asserting claims under 42 U.S.C. § 1983, alleging that the forensic consultants violated their constitutional rights under the Fourth and Fourteenth Amendments when, as retained government experts, they provided investigators with—and later testified to—baseless findings regarding bite marks on the victims' bodies; that they knew that the evidence was baseless or at least acted with reckless disregard of that reality. The district court granted summary judgment for both defendants in the Brewer case and for Dr. Hayne in the Brooks case. The two cases have been consolidated here on appeal. We affirm.

I.

A.

On May 1, 1992, Gloria Jackson left her boyfriend Kennedy Brewer at home in charge of her four children. Returning home at approximately 12:30 AM on May 3, she found the house dark, and Brewer refused to let her check on her three-year-old daughter, Christine. The following morning, Jackson realized that Christine was missing, and a search began. The police were summoned. Scent hounds led investigators to Christine's body floating in a creek.

Dr. Hayne, a private pathologist who performed autopsies for the State of Mississippi, concluded that Christine had been raped and had died from strangulation. Noticing what he suspected to be bite marks on the body, Dr. Hayne requested the assistance of Dr. West, a dentist and forensic

2

odontologist. At Brewer's trial, Dr. West testified that he found nineteen human bite marks on Christine's body—all made with only the upper arch—which he concluded belonged to Brewer.

Brewer was indicted, convicted of capital murder, and sentenced to die by lethal injection. The Mississippi Supreme Court affirmed the conviction.[1] Four years later that same court held that Brewer was entitled to an evidentiary hearing regarding DNA evidence taken from semen found on Christine's body. That testing excluded Brewer as the source, and the trial court vacated Brewer's conviction.

The DNA evidence was a match for Johnson, who confessed to the rape and murder. Elements of Johnson's confession were inconsistent with evidence found in the investigation.[2] Nevertheless, on February 15, 2008, the State of Mississippi declined to again prosecute Brewer.

Just under a year later, Brewer brought this 42 U.S.C. § 1983 case against Dr. Hayne and Dr. West, alleging that their false and misleading reports caused his wrongful prosecution and conviction. Dr. Hayne and Dr. West moved to dismiss. The district court held that the defendants enjoyed absolute immunity for their testimony at trial and qualified immunity for the pre-trial reports, and granted summary judgment on the grounds that the suit was time barred. The district court granted a Rule 54(b) motion for final judgment on all federal claims for both defendants. Brewer timely appealed.[3]

---

[1] *Brewer v. State*, 725 So. 2d 106 (Miss. 1998).

[2] For example, Johnson confessed to killing Christine by throwing her in a creek, but the autopsy had concluded that the cause of death was strangulation and that there was no water or foreign material found in her lungs.

[3] Brewer's state law claims, over which the district court accepted supplemental jurisdiction, remain in the district court. Dr. West has submitted no briefing to this Court.

No. 16-60116
Cons. w/ No. 16-60342

B.

Sometime in the evening of September 15, 1990, or early the following morning, three-year-old Courtney Smith of Brooksville Mississippi went missing. After a night-long search, her body was found floating in a pond. Willie Willie, the Coroner and Medical Examiner of Noxubee County, asked Dr. Hayne to perform an autopsy. Dr. Hayne concluded that Courtney had been raped and that the cause of death had been freshwater drowning, finding contusions on Courtney's body, including one on the back of her right wrist that he believed could have been a human bite mark. Dr. West was brought in for an expert opinion, and he took dental impressions of a total of thirteen people, including Johnson, who would later confess to the crime. As the alleged bite mark consisted of only two imprints, Dr. West believed they were from an upper arch, and were made by the perpetrator's two front teeth. After excluding the other twelve individuals, Dr. West concluded that Levon Brooks, an ex-boyfriend of Courtney's mother, had inflicted the marks. Brooks was indicted, tried, convicted, and sentenced to life in prison. The Mississippi Supreme Court denied Brooks' direct appeals.

While being interviewed about the death of Christine Jackson, Johnson also confessed to the abduction, murder, and rape of Courtney Smith. On February 20, 2008, a Mississippi Circuit Court vacated Brooks' conviction, and the state dismissed the case.

On February 13, 2009, Brooks filed his 42 U.S.C. § 1983 suit against Dr. Hayne and Dr. West, alleging that they had violated his right to due process by providing testimony and reports about the alleged bite mark that were either intentionally or recklessly fraudulent and which directly led to his indictment and conviction. Dr. Hayne and Dr. West moved to dismiss. Brooks amended his complaint. Dr. Hayne again moved to dismiss. Dr. West did not.

4

No. 16-60116
Cons. w/ No. 16-60342

The district court granted summary judgment, dismissing all federal claims against Dr. Hayne. The district court granted a Rule 54(b) motion for final judgment on all federal claims for Dr. Hayne only. Brooks timely noticed his appeal.[4] Dr. West is not a party to Brooks' appeal.

## II.

We review the district court's grant of summary judgment *de novo*, applying the same standard as the trial court.[5] Summary judgment is appropriate where there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law.[6] On summary judgment, a court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor.[7] To survive summary judgment, the non-movant must supply evidence "such that a reasonable jury could return a verdict for the nonmoving party."[8]

"In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry. The first asks whether the facts, '[t]aken in the light most favorable to the party asserting the injury . . . show the officer's conduct violated a [federal] right.'"[9] "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation."[10]

---

[4] Brooks' state law claims against Dr. Hayne, over which the district court accepted supplemental jurisdiction, remain in the district court.

[5] *Milton v. Tex. Dept. of Criminal Justice*, 707 F.3d 570, 572 (5th Cir. 2013) (citing *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 221 (5th Cir. 2011)).

[6] FED. R. CIV. P. 56(a).

[7] *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)).

[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[9] *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

[10] *Tolan*, 134 S. Ct. at 1866 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

No. 16-60116
Cons. w/ No. 16-60342

III.

A.

As an initial matter, Brewer argues that the district court erred in holding his claim time barred; that the proper accrual date for his claim was the date the prosecution dismissed the charges. This is a thorny question, one which we decline to reach because our principles of immunity so plainly resolve the controversy. For the purposes of this appeal, we can assume without deciding that Brewer's claims are timely.

B.

Plaintiffs argue the Defendants enjoy no qualified immunity. A defendant may act under color of state law for the purposes of § 1983 without receiving the related protections of qualified immunity.[11] At the same time, "[t]he government's need to attract talented individuals is not limited to full-time public employees. Indeed, it is often when there is a particular need for specialized knowledge or expertise that the government must look outside its permanent work force to secure the services of private individuals."[12] In determining whether a private individual performing a government function is entitled to qualified immunity, we consider whether the service performed was of the type protected at common law at the time § 1983 was passed in 1871 and whether granting immunity in a given case is consistent with the policies underlying § 1983.[13]

Plaintiffs point to *McCullum v. Tepe*, a Sixth Circuit case holding that a part-time prison psychiatrist was not entitled to assert qualified immunity because there was "no common-law tradition of immunity for a private doctor

---

[11] *See Richardson v. McKnight*, 521 U.S. 399, 408-09 (1997). *Richardson* denied immunity to private prison guards in, what the Court described as, a "narrow" context. *Id.* at 413.

[12] *Filarsky v. Delia*, 566 U.S. 377, 390 (2012).

[13] *Id.* at 384.

working for a public institution."[14] But Defendants here, though calling on their medical training, were performing a role that more closely parallels criminal investigation—"a core government activity" traditionally protected at common law by immunity.[15] And while Defendants were not full-time government investigators:

> The protections provided by the common law did not turn on whether someone we today would call a police officer worked for the government full-time or instead for both public and private employers. Rather, at common law, "[a] special constable, duly appointed according to law, ha[d] all the powers of a regular constable so far as may be necessary for the proper discharge of the special duties intrusted to him, and in the lawful discharge of those duties, [was] as fully protected as any other officer."[16]

We are persuaded that Defendants, as consulting forensic experts, were engaged in the criminal investigative functions of the state protected at common law and are here entitled to assert qualified immunity.

C.

Qualified immunity is a complete defense, and Defendants are entitled to summary judgment on the basis of qualified immunity unless Plaintiffs can show triable issues as to whether Defendants violated a clearly established right of which a reasonable officer would have been aware.[17] Plaintiffs argue that the clearly established right at issue here is the due process right to be free from fabricated evidence. We have previously held that "deliberate or knowing creation of misleading and scientifically inaccurate [evidence] amounts to a violation of a defendant's due process rights," and that reasonable

---

[14] 693 F.3d 696, 702-04 (6th Cir. 2012).

[15] *Filarsky*, 599 U.S. at 386-88.

[16] *Id.* at 387-88 (citing W. MURFEE, A TREATISE ON THE LAW OF SHERIFFS AND OTHER MINISTERIAL OFFICERS § 1121, p. 609 (1884)).

[17] *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008).

No. 16-60116
Cons. w/ No. 16-60342

officers know of this right.[18] The only question that remains is whether Plaintiffs have provided competent summary judgment evidence sufficient to raise a question of fact for trial as to whether Defendants violated that clearly established right.

As a baseline, we agree with the district court that merely presenting forensic odontology evidence in the early 1990s was not unreasonable or violative of due process. While that sort of evidence has been called into question,[19] at the time of Plaintiffs' trials, forensic odontology was widely accepted. Plaintiffs are thus tasked with demonstrating not that the evidence Defendants presented is no longer considered trustworthy, but rather that Defendants intentionally created false evidence or intentionally produced evidence that they knew to be scientifically inaccurate by the standards of the day.

Plaintiffs argue that deliberate falsehoods "can be, and usually must be, proved from circumstantial evidence."[20] Plaintiffs direct us to the following circumstantial evidence, which they contend creates a question for trial as to whether Defendants intentionally created false or scientifically inaccurate bite mark evidence: (1) other expert opinions that have concluded that there was "no scientific basis" for determining the contusions on the bodies were bite marks and that "Dr. West knew or should have known that they were not bite marks"; (2) other expert opinions that determined that finding nineteen bite marks made only with the upper teeth "is unreasonable and unprecedented"; (3) a previous case where an expert for the defense testified that he believed

---

[18] *Id.* at 237; *see also Castellano v. Fragozo*, 352 F.3d 939, 955 (5th Cir. 2003) (en banc).

[19] *See, e.g.*, Radley Balko, *The Latest from the World of Bite Mark Evidence*, WASH. POST: THE WATCH (Feb. 1, 2016), https://www.washingtonpost.com/news/the-watch/wp/2016/02/01/the-latest-from-the-world-of-bite-mark-evidence/?utm_term=.cbc786bc2cf0

[20] *United States v. Nixon*, 816 F.2d 1022, 1029 (5th Cir. 1987).

that there was no bite mark present until Dr. West, in an effort to match a mold of the accused's teeth to the supposed mark, pressed the mold into the flesh; (4) the "extraordinary frequency" with which Defendants found bite mark evidence—over one hundred times and in every so-called "rape overkill" case; (5) Defendants' failure to produce any other experts who agreed with their conclusions; and (6) the allegedly "checkered" professional histories of Defendants. Finally, while Plaintiffs argue that they are not required to provide a motive, they contend that a reasonable jury could find that Defendants were incentivized to fabricate evidence by the inherent pressures forensic analysts face from the State.[21]

Plaintiffs have made a compelling showing that Defendants were negligent in their forensic analysis, but negligence alone will not defeat qualified immunity.[22] Viewed in the most favorable light, Plaintiffs' evidence is not suggestive of an intent to fabricate.[23] The disagreement voiced by Plaintiffs' experts is evidence that Defendants were mistaken in their conclusions or methodologies, but no more. Likewise, the evidence of the "extraordinary frequency" with which Defendants found bite mark evidence certainly undermines the reliability of the forensic odontology techniques they employed—and perhaps the field in general—but does not lead to an inference

---

[21] *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 318 (2009).

[22] *See Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995) (holding "that the negligent act of a state official which results in unintended harm to life, liberty, or property, does not implicate the Due Process Clause"); *see also Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (holding that "the qualified immunity standard gives ample room for mistaken judgments protecting all but the plainly incompetent or those who knowingly violate the law").

[23] Plaintiffs also argue that, per a Tenth Circuit case, *Pierce v. Gilchrist*, recklessness is sufficient to defeat qualified immunity under § 1983. 359 F.3d 1279, 1299 (10th Cir. 2004). Because we find that the evidence Plaintiffs have provided does not indicate Defendants were more than grossly negligent, we do not reach the question of whether recklessness in producing scientific evidence is sufficient to defeat qualified immunity.

of intentional fabrication.[24] The allegation of a previously false bite mark by Dr. West—whether created intentionally or accidentally—gives pause. Yet the inference Plaintiffs ask us to draw from that evidence is one generally not permitted under the federal rules.[25] The same is true of the evidence regarding Defendants' professional histories—propensity evidence will not sustain an inference that the Defendants intentionally fabricated evidence here.

As to Dr. Hayne specifically, Brewer additionally argues that Dr. Hayne either deliberately failed to perform biopsy examinations of the alleged bite marks on Christine Jackson's body or did perform those biopsies and concealed the results. According to Brewer, Dr. Hayne did so because an absence of hemorrhage in the tissues would indicate that the bite marks were made post-mortem and thus could not have been made by human teeth. Brewer argues that Dr. Hayne might hesitate to biopsy bite marks after the Brooks case, where the biopsies contained no hemorrhaging.[26] Brewer also points to Christine Jackson's autopsy report, which contained a diagram indicting that biopsies were taken of the alleged bite marks, as evidence that Dr. Hayne deliberately hid exculpatory evidence.[27]

Absent some additional evidence, the autopsy form and the result of the biopsy in the Brooks case are not sufficient to raise a reasonable inference that

---

[24] This is especially true given the lack of any evidence in the record as to what a "normal" frequency of bite mark cases would be and given other arguments by Plaintiffs regarding the high volume of autopsies Dr. Hayne performed.

[25] Rule 404 does not allow a party to introduce evidence of a person's character or character trait in order to show conformance with that character or character trait on a given occasion. FED. R. EVID. 404. Rule 404(b)(2) includes an exception to the propensity evidence ban to demonstrate knowledge or lack of mistake, but the inference that Dr. West committed the bad act in this case because he committed a bad act in the past is not permitted.

[26] Because the autopsy of Courtney Smith showed that she had died by drowning, Dr. Hayne testified that, had the mark occurred after death, it would have to have been caused by something in the pond.

[27] Dr. Hayne later claimed that he did not recall taking any biopsies of the bite marks on Christine Jackson and, in any event, that he did not examine any bite mark biopsy tissues.

Dr. Hayne either deliberately failed to perform biopsies or withheld exculpatory evidence. At most, Plaintiffs have presented evidence that Dr. Hayne was negligent in failing to perform the biopsies or in failing to examine biopsied tissues. Ultimately, we think that true of all the evidence in the record: viewed in its entirety and in the light most favorable to Plaintiffs, the record tends to show that Defendants were negligent—perhaps grossly so—but no more.

Plaintiffs have failed to raise a genuine issue of fact as to whether Defendants violated their right to due process by intentionally creating false or misleading scientific evidence. Defendants were entitled to summary judgment under the defense of qualified immunity. We affirm.