# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————

No. 16-20702

———————

RICHARD WINFREY, JR.,

      Plaintiff - Appellant

v.

LACY ROGERS, Former San Jacinto County Sheriff; LENARD JOHNSON, Former San Jacinto County Sheriff's Department Deputy,

      Defendants - Appellees

United States Court of Appeals<br>
Fifth Circuit<br>
**FILED**<br>
August 20, 2018<br>
<br>
Lyle W. Cayce<br>
Clerk

———————

Appeal from the United States District Court
for the Southern District of Texas

———————

## ON PETITION FOR REHEARING

Before JOLLY and ELROD, Circuit Judges, and RODRIGUEZ, District Judge.*

E. GRADY JOLLY, Circuit Judge:

      Treating Defendant–Appellee Lenard Johnson's petition for rehearing en banc as a petition for panel rehearing, the petition for panel rehearing is DENIED.  The petition for rehearing en banc is also DENIED.  The prior opinion, *Winfrey v. Rogers*, 882 F.3d 187 (5th Cir. 2018), is withdrawn, and the following opinion is substituted.  The modifications to the original opinion are

---

\* District Judge of the Western District of Texas, sitting by designation.

minor and do not affect the substance or outcome of the earlier opinion, except in Part III.A, which now holds that Johnson's omission of the fact that the blood and hair found at the crime scene did not match Richard Winfrey Jr. ("Junior") or Megan Winfrey was not a "material" omission, and which reflects that it is Junior's burden to overcome qualified immunity, not Johnson's burden to show that qualified immunity applies.

Junior was arrested and charged with murder after a botched investigation and various alleged violations of Junior's Fourth Amendment rights.  The State tried him on murder charges.  The jury acquitted him in twenty-nine minutes, but only after he had served some 16 months in prison. He brought this 42 U.S.C. § 1983 action against various officers of San Jacinto County, Texas.  After some seven years of litigation—including one appearance before this Court, *see Winfrey v. San Jacinto Cty.*, 481 F. App'x 969 (5th Cir. 2012) (*Winfrey I*)—defendants have come and gone, leaving only the defendant Deputy Sheriff Lenard Johnson to answer for Junior's charges of constitutional violations.  Junior claims that Deputy Johnson violated his rights by signing an arrest-warrant affidavit that lacked probable cause by omitting and misstating key facts.  This unconstitutional warrant, he alleged, resulted in his unlawful arrest and imprisonment.  Johnson moved for summary judgment on the basis of qualified immunity.  The district court granted Johnson's motion, and Junior appeals.

We VACATE the district court's judgment and REMAND for trial essentially on the factual issue of whether Johnson acted recklessly, knowingly, or intentionally by omitting and misrepresenting material facts in his affidavit when seeking an arrest warrant for Junior.  Because this litigation has continued for over seven years, including two appeals before this Court, we emphasize that this case must go to trial without further delay.

No. 16-20702

I.

Murray Wayne Burr was found murdered in his home in San Jacinto County, Texas, in August 2004. The San Jacinto County Sheriff's Office—including Sheriff Lacy Rogers and Deputy Johnson—and the Texas Rangers focused their investigation on three suspects: then-seventeen-year-old Junior; his then-sixteen-year-old sister, Megan Winfrey; and their father, Richard Winfrey, Sr. ("Senior").

Several weeks after the murder, the investigative blunders began. Texas Ranger Grover Huff requested that Keith Pikett, a deputy from a nearby law enforcement agency, assist the investigation by running "scent lineups." This dubious adventure required Pikett to call upon two of his pet bloodhounds and to acquire scents from four suspects—Megan; Junior; Megan's boyfriend, Chris Hammond; and Hammond's friend, Adam Szarf. Huff, then, following the procedure that Pikett established, gathered scents from the suspects—by asking each person to rub a piece of gauze on his or her skin and put that gauze in a paper bag—and from the victim—by rubbing gauze against Burr's clothes. Pikett, rather "unscientifically," also carried around in a duffel bag filler scents which he had gathered from prisoners at the Fort Bend County Jail. He placed this bag in his SUV, in which his dogs rode daily.

Pikett proceeded to conduct a "drop-trail" exercise with his dogs. That exercise was conducted at the crime scene where Huff provided the hounds with a scent sample. Huff thought he had provided the scent for Junior, but he mistakenly scented the dogs for Hammond instead. Huff notified Pikett and the other investigators about the mistake after the test, and both Huff and Pikett mentioned it in their formal police reports.

Meanwhile, Junior and Megan allowed investigators to collect their DNA to compare with DNA found in blood discovered at Burr's home. The laboratory reported that the blood did not belong to either. The investigators also wanted

3

to compare Megan's hair to hair found at the murder scene. Sheriff Rogers wrote a search-warrant affidavit to obtain Megan's hair, but he failed to mention the lab report showing her blood was not at the scene. He also misstated that the drop-trail was conducted using Junior's scent pad instead of Hammond's. Further, he did not acknowledge the incidental fact that all forensic evidence from the crime scene did not match the Winfreys. Perhaps recognizing the fumbles in the process, the investigation was put on hold.

After stalling for a year, the investigation restarted when a jailhouse informant, Campbell, came forward with a story incriminating the Winfreys in Burr's murder. Campbell said that while he and Senior were in the same jail cell, Senior confessed to murdering Burr. Johnson visited and interviewed Campbell. There, Campbell told him: (1) Megan and Junior helped Senior get into Burr's house, (2) Senior severely beat up Burr and cut his neck, (3) Senior cut off Burr's genitals and stuck them in Burr's mouth, (4) Junior and Megan were in Burr's house the whole time, and (5) Senior had wanted to kill Burr because Burr's neighbor told Senior that Burr had touched one of Senior's kids. Johnson wrote a report of Campbell's story and noted that the details of the injuries were generally accurate in relation to the physical evidence, except that Burr's genitals were not cut off and put in his mouth.

Johnson visited Campbell a month later, taking Rogers with him. Campbell's story changed. First, Campbell added that Burr was killed in his living room, which Johnson said was not known to the public at that time. Second, he said that Senior stabbed and shot Burr, though there was no evidence that Burr was shot. Third, Campbell now claimed that one of Senior's cousins, not Junior or Megan, was the accomplice to the murder. Finally, Campbell said that Senior confessed to stealing a pistol and long gun from Burr's house and that he put these guns in a nearby "hollow." Investigators

4

No. 16-20702

found a hollow matching the description, but no weapons were there.  Johnson said the public did not know about the stolen weapons.

Pikett, undeterred by earlier failures, conducted a second scent lineup using Senior's scent.  The bloodhounds alerted each time on Senior's scent.

Deputy Sheriff Johnson signed two affidavits to obtain search warrants to obtain Junior's and Senior's hair from each of them to compare with the hair found in Burr's home.  Each affidavit omitted any reference to: (1) the inconsistencies between Campbell's two interviews, (2) the inconsistencies between Campbell's statements and the other evidence, (3) Junior's and Megan's blood not being found at the scene, and (4) the hair found at the scene not matching Burr or Megan.  The judge issued both warrants to Johnson, but the hair obtained from Burr's home did not match the hair of either Junior or Senior.

Nevertheless, Johnson signed affidavits for arrest warrants for Megan, Junior, and Senior.[1]  The arrest-warrant affidavits also omitted the same inconsistencies as the search-warrant affidavits, and additionally omitted the fact that the hairs at the crime scene did not belong either to the Winfreys or Burr.

---

[1] The record contains only the arrest-warrant affidavits for Senior and Megan. Johnson argues that the arrest-warrant affidavit for Senior cannot be used as a replacement for Junior's arrest affidavit, which is not in the record due to Junior's alleged intentional spoliation.  But this issue was already resolved in *Winfrey I*, 481 F. App'x 969.  There, we concluded that we would look to the affidavits for Megan and Senior because: (1) they "suggest that . . . the same affidavit language [was used] for all three Winfreys"; (2) "investigation reports indicate that warrants were obtained for [Junior] on the same day Johnson executed an arrest-warrant affidavit for Megan"; and (3) "Rogers indicated that the drop-trail evidence and Campbell's 'jailhouse snitching' established probable cause to obtain 'a search warrant for the hairs of my *suspects*.'" *Id.* at 978.  Because of the law-of-the-case doctrine, we find that the prior panel's decision "should continue to govern" this case.  *See Musacchio v. United States*, 136 S.Ct. 709, 716 (2016) (quoting *Pepper v. United States,* 562 U.S. 476, 506 (2011)).

Junior was thus charged with capital murder and sat in jail for two years before his case was tried in June 2009. On June 12, he was found not guilty after twenty-nine minutes of jury deliberation.

On May 26, 2010, Junior filed this § 1983 lawsuit against every police investigator involved in his murder case. At this point in this lengthy litigation, only his claim against Deputy Sheriff Johnson remains. Junior says that Johnson violated his constitutional rights by using false information to secure arrest and search warrants and by failing to disclose exculpatory evidence.

This case has visited us before. *See generally Winfrey I*, 481 F. App'x 969. There, we vacated the district court's grant of summary judgment in favor of Johnson and remanded for additional discovery on whether Johnson violated the Fourth Amendment by acting with reckless disregard for the truth, as opposed to merely carelessness or negligence, when he included a material falsehood and omitted material information in his warrant affidavits. *Id.* at 979–81.

On remand, the district court held a hearing related to multiple *Daubert* motions. Junior contends that, at that hearing, the district court barred Junior's expert, David Kunkle, from testifying at trial.

After discovery concluded, Johnson again moved for summary judgment. First, Johnson argued that Junior's claim against Johnson was time-barred. But the district court ruled that it was not barred because the statute of limitations period began when Junior was acquitted, and he filed his lawsuit within a year of his acquittal. Second, the court examined whether Johnson violated Junior's Fourth Amendment rights by recklessly omitting and misstating certain facts in his search- and arrest-warrant affidavits. The court found that one omission was not reckless: omitting Campbell's statements that were inconsistent with each other. But it found that others were reckless:

omitting Campbell's statements that were contradicted by the physical evidence and omitting the DNA and hair evidence that did not link the Winfreys to the scene, which could show that someone other than the Winfreys had to have been present in Burr's house. The court did not say whether Johnson's inclusion of the statement that "the drop-trail from the crime scene to the Winfrey house used [Junior]'s scent" was reckless. Third, the court decided that Johnson nevertheless was protected by qualified immunity, even though he violated Junior's rights, because a reasonable magistrate, reviewing a corrected affidavit, would have found probable cause to search and arrest Junior.

Junior timely appealed. He contends: (1) his arrest-warrant claim is not time-barred; (2) Johnson is not entitled to qualified immunity; (3) the district court abused its discretion in excluding his expert; and (4) if the Court reverses and remands, it should remand this matter to a different judge.

## II.

### A.

The first issue we address is whether Junior has a valid Fourth Amendment claim. We conclude that he does.

Junior's complaint never alleges in magic words that Johnson violated his rights under the Fourth Amendment. Nevertheless, although the parties have argued this case in a confusing manner from the start, both sides have argued, at times, that the case involves a Fourth Amendment federal malicious-prosecution claim; at other times, they have argued whether the claim involves a Fourteenth Amendment due process claim. In any event, as the case is presented before us now, there is a proper Fourth Amendment claim because of the law-of-the-case doctrine. In *Winfrey I*, this Court decided that this case presented a Fourth Amendment claim, concluding that Johnson was not entitled to qualified immunity on summary judgment because Junior

alleged that Johnson violated the Fourth Amendment by signing objectively unreasonable arrest-warrant affidavits. 481 F. App'x at 979. Additionally, on remand, both sides argued the Fourth Amendment malicious-prosecution issue, and the district court decided the case as a Fourth Amendment case.

"The law-of-the-case doctrine generally provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Musacchio*, 136 S.Ct. at 716 (quoting *Pepper*, 562 U.S. at 506). The doctrine is meant to promote judicial efficiency so that appellate courts do not continually have to reexamine subsequent proceedings in the same case. *See Chapman v. Nat'l Aeronautics & Space Admin.*, 736 F.2d 238, 241 (5th Cir. 1984). It forecloses reexamination on a subsequent appeal. *Pegues v. Morehouse Par. Sch. Bd.*, 706 F.2d 735, 738 (5th Cir. 1983). But the law-of-the-case doctrine does not apply when "(1) the evidence on a subsequent trial was substantially different, (2) controlling authority has since made a contrary decision of the law applicable to such cases, or (3) the decision was clearly erroneous and would work manifest injustice." *Lyons v. Fisher*, 888 F.2d 1071, 1075 (5th Cir. 1989). Here, none of the exceptions apply, because the relevant precedent was decided before the suit was filed in 2011, the evidence has remained the same throughout, and the decision was not clearly erroneous and did not risk manifest injustice.

Furthermore, we agree that a Fourth Amendment claim is cognizable under the facts here. This Court has held that although there is no "freestanding constitutional right to be free from malicious prosecution," "[t]he initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection—the Fourth Amendment if the accused is seized and arrested, for example." *Castellano v. Fragozo*, 352 F.3d 939, 945, 953 (5th Cir. 2003) (en banc). In *Albright v. Oliver*, 510 U.S. 266 (1998), a plurality of the Supreme Court said that malicious-prosecution claims

must be based on the Fourth Amendment, rather than on "the more generalized notion of 'substantive due process,'" because the Fourth Amendment is the explicit textual source against this type of government behavior. *Id.* at 273 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). And recently, in *Manuel v. City of Joliet*, 137 S.Ct. 911 (2017), the Supreme Court considered whether a plaintiff had stated a Fourth Amendment claim when he was arrested and charged with unlawful possession of a controlled substance based upon false reports written by a police officer and an evidence technician. *Id.* at 915. There, the Court said the plaintiff's "claim fits the Fourth Amendment, and the Fourth Amendment fits [the plaintiff's] claim, as hand in glove." *Id.* at 917. And it held "that the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process." *Id.* at 920.

These cases fully support a finding that the Fourth Amendment is the appropriate constitutional basis for Junior's claim that he was wrongfully arrested due to the knowing or reckless misstatements and omissions in Johnson's affidavits. We, therefore, hold that a Fourth Amendment claim is presented, and we will decide the remainder of the issues based upon this legal conclusion.

### B.

Johnson argues that Junior's claim is time-barred. Junior was arrested on February 8, 2007. His prosecution began in June 2009, and he was acquitted on June 12. He filed this suit on May 26, 2010.

Section 1983 provides a federal cause of action, but federal courts look to state's statute of limitations for personal-injury torts to decide when § 1983 claims toll. *See Wallace v. Kato,* 549 U.S. 384, 387 (2007); *see also Piotrowski v. City of Hou.*, 237 F.3d 567, 576 (5th Cir. 2001) ("The statute of limitations for a suit brought under § 1983 is determined by the general statute of

limitations governing personal injuries in the forum state."). "In Texas, the applicable limitations period is two years." *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993); *see* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) ("[A] person must bring suit . . . not later than two years after the day the cause of action accrues."). But "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace*, 549 U.S. at 388. "In defining the contours and prerequisites of a § 1983 claim, including its rule of accrual, courts are to look first to the common law of torts." *Manuel*, 137 S.Ct. at 920.

The accrual date depends on whether Junior's claim more closely resembles one for false imprisonment or one for malicious prosecution. *See id.* at 921–22 (remanding the case to the Seventh Circuit to consider whether the claim was more like a false imprisonment or a malicious prosecution). A false-imprisonment claim is based upon "detention without legal process." *Wallace,* 549 U.S. at 389. It "begins to run at the time the claimant becomes detained pursuant to legal process." *Id.* at 397. A malicious-prosecution claim is based upon "detention accompanied . . . by *wrongful institution* of legal process." *Id.* at 390. It "does not accrue until the prosecution ends in the plaintiff's favor." *Castellano*, 352 F.3d at 953.

Johnson urges us to find that this case fits within *Wallace v. Kato*. There, the Supreme Court found that the plaintiff's unlawful warrantless-arrest Fourth Amendment claim resembled a false-imprisonment claim, because the constitutional violation occurred when the plaintiff was arrested without a warrant instead of when the conviction was later set aside. 549 U.S. at 397. Law enforcement officers transported the fifteen-year-old plaintiff to a police station—without a warrant or probable cause to arrest him—and interrogated him into the early morning. *Id.* at 386, 389. So, the Court found that the plaintiff's claim accrued when he was initially arrested. *Id.* at 397.

Here, we find that Junior's claim is more like the tort of malicious prosecution, because Junior was arrested through the wrongful institution of legal process: an arrest pursuant to a warrant, issued through the normal legal process, that is alleged to contain numerous material omissions and misstatements. Junior thus alleges a wrongful institution of legal process—an unlawful arrest *pursuant to* a warrant—instead of a detention with no legal process. Because Junior's claim suggests malicious prosecution rather than false imprisonment, his claim accrued when his criminal proceedings ended in his favor on June 12, 2009. He filed his suit well within the two-year limitations period on May 26, 2010. So Junior's claim survives the time bar.

## III.

## A.

Even if the claim is not time-barred, Johnson argues, this case must not proceed further because he is entitled to qualified immunity.

This court reviews the district court's grant of summary judgment de novo. *Brewer v. Hayne*, 860 F.3d 819, 822 (5th Cir. 2017). Summary judgment is appropriate when the movant is entitled to judgment as a matter of law and there is no genuine dispute of material fact. *Id.* We must draw all reasonable inferences in the non-movant's favor and view the evidence in the light most favorable to the non-movant. *Id.* "To survive summary judgment, the non-movant must supply evidence 'such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

When resolving qualified immunity on summary judgment, courts determine (1) whether the facts, taken in the light most favorable to the party asserting the injury, show the officer violated a federal right and (2) whether the right was "clearly established" when the violation occurred. *Tolan v. Cotton*, 134 S.Ct. 1861, 1865–66 (2014). "A Government official's conduct

violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (alterations in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The Court does not need "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* The Court uses a standard of "objective reasonableness" to define "the qualified immunity accorded an officer whose request for a warrant allegedly caused an unconstitutional arrest." *Malley v. Briggs*, 475 U.S. 335, 344 (1986). Qualified immunity "ensure[s] that before they are subjected to suit, officers are on notice their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). And it "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (quoting *Malley*, 475 U.S. at 341).

Clearly established law is not determined "at a high level of generality." *Ashcroft*, 563 U.S. at 742. Instead "[t]he dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix*, 136 S.Ct. at 308 (quoting *Ashcroft*, 563 U.S. at 742). The inquiry must look at the specific context of the case. *Id.*

Here, the clearly established constitutional right asserted by Junior is to be free from police arrest without a good faith showing of probable cause. Since *Franks v. Delaware*, 438 U.S. 154 (1978), it has been clearly established that a defendant's Fourth Amendment rights are violated if (1) the affiant, in support of the warrant, includes "a false statement knowingly and intentionally, or with reckless disregard for the truth" and (2) "the allegedly false statement is necessary to the finding of probable cause." *Id.* at 155–56. In *Franks*, the Supreme Court observed that the warrant requirement is meant "to allow the

magistrate to make an independent evaluation of the matter." *Id.* at 165. It requires affiants to "set forth particular facts and circumstances underlying the existence of probable cause," including those that concern the reliability of the information and the credibility of the source to avoid "deliberately or reckless false statement[s]." *Id.*

Still, "negligence alone will not defeat qualified immunity." *Brewer*, 860 F.3d at 825. "[A] proven misstatement can vitiate an affidavit only if it is established that the misstatement was the product 'of deliberate falsehood or of reckless disregard for the truth.'" *United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980) (quoting *Franks*, 438 U.S. at 171). Recklessness requires proof that the defendant "'in fact entertained serious doubts as to the truth' of the statement." *Hart v. O'Brien*, 127 F.3d 424, 449 (5th Cir. 1997) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)), *abrogation on other grounds recognized by Spivey v. Robertson*, 197 F.3d 772, 775 (5th Cir. 1999).

Here, we conclude that Junior alleges a clearly established constitutional violation. Under the first prong of *Franks*, Junior must present evidence that Johnson, through material omissions or otherwise, made "a false statement knowingly and intentionally, or with reckless disregard for the truth." 438 U.S. at 155. Junior provides evidence that Johnson made false statements in his affidavit by (1) omitting Campbell's statements that were contradicted by the physical evidence; (2) misstating that Pikett's drop-trail from Burr's house to the Winfrey house used Junior's scent, when the drop-trail actually used Hammond's scent; and (3) omitting Campbell's inconsistencies between his statements, that is, between Campbell's first statement—which was related in the affidavit—that said that Megan and Junior helped Senior to murder Burr and Campbell's inconsistent later statement that Senior's cousin was the accomplice. We find that this showing is also sufficient to demonstrate that there is an issue of material fact as to whether Johnson acted intentionally,

knowingly, or recklessly, because Junior alleges that Johnson either knew or should have known that these material omissions and false statements could lead to an arrest of Junior without probable cause.  In short, the evidence presented is sufficient to support a finding that his conduct was unreasonable in the light of the well-established principle requiring probable cause for the issuance of an arrest warrant.

Yet, we must proceed further to the second prong of *Franks* in order to resolve whether "the allegedly false statement is necessary to the finding of probable cause," as required by the *Franks* analysis.  438 U.S. at 156.  To determine whether the false statement was necessary for this finding, *Franks* requires us to consider the faulty affidavit as if those errors and omissions were removed.  We then must examine the "corrected affidavit" and determine whether probable cause for the issuance of the warrant survives the deleted false statements and material omissions.  *See Franks*, 438 U.S. at 156 (saying that courts must excise false statements); *United States v. Bankston*, 182 F.3d 296, 305–06 (5th Cir. 1999) (applying *Franks* to omissions and using a corrected affidavit that "contain[ed] the allegedly exculpatory conversation" to determine whether that affidavit would establish probable cause to authorize electronic surveillance), *overruled on other grounds by Cleveland v. United States*, 531 U.S. 12 (2000).  The warrant will be valid only if the corrected affidavit establishes probable cause for Junior's arrest.

This Court reviews the district court's probable-cause determination de novo.  *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005).  Probable cause requires only "a probability or substantial chance of criminal activity, not an actual showing of such activity."  *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983).  Probable cause is a "practical and common-sensical standard." *Florida v. Harris*, 568 U.S. 237, 244 (2013).  It looks to the "totality of the circumstances" to determine whether the magistrate with "the facts available

to [him] would 'warrant a [person] of reasonable caution in the belief'" to find that the suspect committed the crime for which he is being arrested. *See id.* at 243 (alterations in original) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983) (plurality opinion)).

So we turn to review the "corrected" affidavit to determine whether probable cause was established that Junior murdered Murray Wayne Burr. Examining the totality of the circumstances, we find that the corrected affidavit does not contain sufficient information to satisfy the probable-cause requirement.[2]  A corrected affidavit would contain the following facts, which were omitted from Johnson's affidavit.  First, a corrected affidavit would include reference to the material fact that Pikett used the scent of Christopher Hammond, Megan's boyfriend, instead of Junior's.  This omitted information was necessary for the state-trial judge to consider, because it seriously affects whether Junior was present at the scene of Burr's murder.  There was no other physical evidence that connected Junior to the murder scene besides the scent lineup.  Second, a corrected affidavit would have referred to Campbell's statement that Senior's cousin—not Megan and Junior, like he had said earlier—let Senior into Burr's house to kill Burr.  Although this fact would not have mattered as to an arrest warrant for Senior, it certainly was material for Junior, because in one scenario, he was connected to the murder, and in the other, he may not have been present at the scene.  Third, a corrected affidavit would have apprised the state-trial judge that Campbell's statements

---

[2] The district court thought there was enough information to support probable cause to arrest Junior because of: (1) a possibly romantic relationship between Burr and Megan; (2) Megan's desire for Burr's hidden money; (3) the presence of Junior's, Megan's, and Senior's scents on Burr; and (4) Campbell's statement that Senior murdered Burr with the help of Megan and Junior.

contradicted aspects of the physical evidence.[3]  Campbell said that Burr was both stabbed and shot—although he was only stabbed—and that Senior had cut off Burr's body part, which was not true.  Although neither of these false statements, considered independently, would necessarily have been fatal to the affidavit—because Senior could have told Campbell anything—together with Campbell's other statements, these would have served to undermine Campbell's reliability.  Weighing the totality of the circumstances, we conclude that a reasonable magistrate would not have issued a warrant on the basis of this corrected affidavit, because the addition of the omitted material facts would have dissuaded the judge from issuing the warrant.

In sum, assuming all factual disputes in favor of Junior, we hold (1) there is an issue of material fact as to whether Johnson recklessly, knowingly, or intentionally made material misstatements and omitted material information and (2) a corrected affidavit would not show probable cause to arrest Junior. Thus, Junior has satisfied his burden of showing that there is an issue of material fact as to whether Johnson violated his clearly established rights, and he is entitled to present his case to the factfinder.

B.

Still, Johnson further contends that he is not liable to Junior because there were two independent intermediaries that intervened to break the causal chain between Johnson's alleged Fourth Amendment violation and Junior's incarceration: (1) the grand jury that indicted Junior and (2) the state judge who presided over the Winfreys' trial.  We conclude that neither independent

---

[3] Although Junior argues that the absence of a match between Junior's and Megan's blood with evidence from the scene "suggests that someone else was involved in the murder," we do not think the record supports that any blood but Burr's was found at the scene.  The best inference from the blood DNA, then, is that whoever killed Burr wore gloves or simply avoided any injury by the victim.  And Junior's claim that a single female hair found at the scene—that was not Megan's—is not a "material" fact.

intermediary broke the causal chain between Johnson's faulty affidavit and Junior's incarceration.

Under the independent-intermediary doctrine, "'if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation' for the Fourth Amendment violation." *Jennings v. Patton*, 644 F.3d 297, 300–01 (5th Cir. 2011) (quoting *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010)).[4] "[E]ven an officer who acted with malice . . . will not be liable if *the facts* supporting the warrant or indictment are put before an impartial intermediary such as a magistrate or a grand jury, for that intermediary's independent decision breaks the causal chain and insulates the initiating party." *Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 554 (5th Cir. 2016) (quoting *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988)), *cert. denied sub nom. Buehler v. Austin Police Dep't*, 137 S.Ct. 1579 (2017). But the chain of causation between the officer's conduct and the unlawful arrest "is broken only where *all the facts* are presented to the grand jury, or other

---

[4] Junior urges us to overrule our independent-intermediary doctrine based on *Manuel v. City of Joliet*, but we cannot do that and find it unnecessary. In *Manuel*, the Supreme Court held "that the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process." 137 S.Ct. at 920. The Court said that a grand jury indictment that "was entirely based on false testimony" could not expunge the plaintiff's Fourth Amendment claim. *Id.* at 920 n.8. But it did not hold that officers can never be insulated from liability based on later determinations by an intermediary when all the necessary information was placed before that intermediary. Instead, the Court affirmed a principle that we have consistently followed: when an intermediary's proceeding is tainted by an officer's unconstitutional conduct, the independent-intermediary doctrine does not apply. *Compare id.* ("[I]f the proceeding is tainted—as here, by fabricated evidence—and the result is that probable cause is lacking, then the ensuing pretrial detention violates the confined person's Fourth Amendment rights . . . ."), *with Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 554 (5th Cir. 2016), *cert. denied sub nom. Buehler v. Austin Police Dep't*, 137 S.Ct. 1579 (2017) (stating that under the "taint" exception, "an independent intermediary's probable cause finding does not protect law enforcement officials whose 'malicious motive . . . lead[s] them to withhold any relevant information.'" (alteration in original) (quoting *Cuadra*, 626 F.3d at 813)).

17

independent intermediary where the malicious motive of the law enforcement officials does not lead them to withhold any relevant information from the independent intermediary." *Id.* (emphasis added) (quoting *Cuadra*, 626 F.3d at 813).

Here, the record does not indicate that the material information, which we have noted was omitted from Johnson's affidavit, was presented either to the grand jury or the state judge. Stated differently, as far as this record is concerned, the only information before a grand jury was the information in Johnson's affidavit. Neither the plaintiff nor defendant has shown otherwise.

First, because, at best, it is not clear whether "all the facts [were] presented to the grand jury," *Cuadra*, 626 F.3d at 813, we hold that the independent-intermediary doctrine does not apply.

Second, Johnson contends that the state-trial judge found probable cause to authorize Junior's continued detention, thereby insulating Johnson from liability. But the record does not show that the judge ever ruled that there was probable cause to detain Junior. At one hearing, the judge determined that there was probable cause to arrest Megan, but nothing about Junior. And in other hearings, the judge decided whether certain evidence should be allowed at trial and whether Senior should be granted a directed verdict. None of these hearings addressed the central question today: whether there was probable cause to arrest Junior. So we have no basis to find that the subject material omitted information was presented to the state-trial judge.

## IV.

We now turn from the state proceedings to the procedural errors that Junior asserts in the federal proceeding below. Junior contends that the district court excluded the testimony of David Kunkle, a former police chief and Junior's expert witness. He contends this exclusion was an abuse of discretion. But after our examination of the record, we conclude that the

district court never decided whether Kunkle could testify at trial. We are a court of appeals and errors. Inasmuch as the district court made no decision and issued no ruling, it could not have made an error or otherwise created an issue for appeal. We therefore decline to address the exclusion of David Kunkle's testimony until the district judge has expressly ruled on the issue.

Junior contends that the district judge orally ruled from the bench to exclude Kunkle from trial on October 20, 2014. But at that hearing, the judge never explicitly ruled that Kunkle could not testify. He said,

> And there is no salvageable part of the police chief's, [Kunkle,] as I recall. . . . It's simply, it's what we tried very hard to get away from back in the early 80s. And I don't remember when Daubert was, somewhere in there; but I have always believed that expert testimony had to mean something. And we got anybody with a decent resume could say anything was pretty much the rule for a long time.
>
> And the Supreme Court finally said they have to know something in particular about what is going on and it has to be cogent. There is no peer review for police chiefs. The city council, but they're not really peers there, something else entirely different.

Although strongly suggestive, this statement did not expressly grant or deny Johnson's motion to exclude the testimony of Kunkle. Further, the district judge indicated in his minute entry that "an order on the motion" would be entered following the hearing, but no such order was ever entered.

Furthermore, the Supreme Court has made clear that trial judges must play a "gatekeeping" role when examining the reliability of experts, and the court's inquiry must be "tied to the facts" of the particular case. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993)). The district court is required to make a ruling and provide articulable reasoning before we can review whether its decision was proper. Here, if the question arises on remand, the district court will need to make clear its basis for its ruling on Kunkle's testimony.

No. 16-20702

V.

Finally, Junior requests that this Court remand the matter to a different district judge. We find no basis for that request.

VI.

In this opinion, we have held that (1) Junior has alleged a valid Fourth Amendment claim against Johnson; (2) Junior's claim is not time-barred; (3) Johnson has not shown that his alleged conduct is protected by qualified immunity; (4) a corrected affidavit did not establish probable cause; (5) Johnson is not protected by the independent-intermediary doctrine; (6) because the district court did not expressly rule whether to exclude Kunkle, we do not address whether the court abused its discretion; and (7) we find no basis for remanding the matter to a different district judge. The primary question on remand appears to be whether Johnson acted recklessly, knowingly, or intentionally by presenting the judge with an arrest-warrant affidavit that contained numerous omissions and misstatements. This case should go to trial without delay in a manner not inconsistent with this opinion.

Accordingly, the judgment of the district court is

VACATED and REMANDED.