# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-30695
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
January 16, 2019

Lyle W. Cayce
Clerk

MIRIAM L. DANNA,

　　　　Plaintiff - Appellant

v.

MATT PURGERSON, individually and in his official capacity; KEITH FOX, individually and in his official capacity; LEONARD SCOGGINS, individually and in his official capacity; STEVE PRATOR, in his official capacity only,

　　　　Defendants - Appellees

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:16-CV-71

Before KING, SOUTHWICK, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

　　　Plaintiff Miriam L. Danna appeals the district court's order granting summary judgment to the defendants on her 42 U.S.C. § 1983 and various state-law claims. We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-30695

## I.

The core facts in this case are undisputed, although the parties quibble over these facts' implications. To the extent a fact is in dispute, we recount it in the light most favorable to Danna.

On January 2, 2015, Danna, her son Nathaniel Danna,[1] and her grandchildren went out for ice cream at a Dairy Queen in Shreveport, Louisiana. While she was ordering at the counter, Danna grabbed a wallet that Gerald Smith, another Dairy Queen patron, had left on the counter while he went to the bathroom. Danna put the wallet in her purse, thinking it was hers or her son's. Several minutes later, Danna realized her mistake and gave the wallet to Tisha Hood, a Dairy Queen cashier. The next day, someone from Smith's church called the Dairy Queen to inquire about the wallet, and then someone else from the church, Rhonda Williams, went to pick it up.

Two weeks later, on January 16, Smith filed a complaint with defendant Matt Purgerson, a detective with the Caddo Parish Sheriff's Office. Smith alleged that he had $153 in his wallet when he left it on the Dairy Queen counter that was missing when the wallet was returned to him. Smith explained he waited two weeks to file the complaint because he did not learn until he returned to the Dairy Queen on January 16 that the restaurant had surveillance video, which could help determine who stole his money.

Purgerson, along with defendants Keith Fox and Leonard Scoggins (also Caddo Parish detectives), reviewed Dairy Queen's surveillance video from January 2. The video shows Danna place her purse next to the wallet, look directly at Smith, place the wallet in her purse, and then exit the camera's view. The video also shows Hood speaking on the phone as she received the

---

[1] We refer to Nathaniel Danna by his first name to avoid confusion with Miriam Danna.

2

wallet from Danna. Purgerson interviewed Hood and Veronica Norman, the restaurant's manager, who both stated that Hood called Norman to ask what to do with the wallet and Norman told Hood to put it in the safe.

Purgerson identified Danna as the woman in the video; he and Fox then interviewed her about the incident. Danna told them she found Smith's wallet in her purse but was unsure how it got there. When Purgerson and Fox told Danna that surveillance video showed her putting the wallet in her purse, she responded that she did not remember doing so but speculated that she must have subconsciously grabbed the wallet from the counter and put it into her purse thinking it was her son's wallet. Purgerson and Fox placed Danna under arrest for misdemeanor theft at the conclusion of the interview. A state-court judge later acquitted Danna following a bench trial.

Danna sued Purgerson, Fox, Scoggins, and Caddo Parish Sheriff Steve Prator in the federal district court. She alleged false arrest, excessive force, and malicious prosecution in violation of the Fourth Amendment and Louisiana state law. The defendants asserted qualified immunity and moved for summary judgment. The district court granted summary judgment for the defendants. It held that probable cause existed to arrest Danna for theft, which defeated her false arrest and malicious prosecution claims. It further held that her allegations that an officer secured her handcuffs too tightly during her arrest did not amount to excessive force. Danna filed a post-judgment motion for reconsideration, which the district court denied. Danna now appeals.

## II.

We review orders granting summary judgment de novo, applying the same standard as the district court. *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016). Summary judgment is warranted "if the movant shows

No. 18-30695

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## A.

We first address Danna's § 1983 and state-law false-arrest claims, which both turn on the issue of probable cause. "To remain within the bounds of the Fourth Amendment, a warrantless arrest must be supported by probable cause." *Sam v. Richard*, 887 F.3d 710, 715 (5th Cir. 2018). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense." *United States v. Castro*, 166 F.3d 728, 733 (5th Cir. 1999) (en banc) (per curiam). Similarly, a false-arrest claim under Louisiana law requires the plaintiff to show the officer acted without reasonable cause, which "exists when the facts and circumstances within the arresting officer's knowledge, and of which he has reasonable trustworthy information, are sufficient to justify an average man of caution in the belief that a [crime] has been committed." *Kyle v. City of New Orleans*, 353 So. 2d 969, 971 (La. 1977); *see also* La. Code Crim. Proc. Ann. art. 213(A)(3) (authorizing warrantless arrest when "[t]he peace officer has reasonable cause to believe that the person to be arrested has committed an offense"). "Probable cause . . . is not a high bar: It requires only the 'kind of "fair probability" on which "reasonable and prudent [people,] not legal technicians, act."'" *Kaley v. United States*, 571 U.S. 320, 338 (2014) (alteration in original) (quoting *Florida v. Harris*, 568 U.S. 237, 244 (2013)).

We agree with the district court that the defendants had probable cause to arrest Danna. The Dairy Queen surveillance video clearly shows Danna taking Smith's wallet and putting it in her purse. Danna then spends some time out of view of the security camera. Smith told police that there was money in the wallet when he left it on the counter but the wallet was empty when it

was returned to him. Given Danna's suspicious behavior on camera, a reasonable person would infer Danna took the money while out of the camera's view. Moreover, it was reasonable for Purgerson and Fox to be suspicious of Danna's insistence that she did not know how Smith's wallet ended up in her purse, and they were not compelled to accept her subsequent explanation that she must have picked it up subconsciously. *See District of Columbia v. Wesby*, 138 S. Ct. 577, 592 (2018) ("[I]nnocent explanations—even uncontradicted ones—do not have any automatic, probable-cause-vitiating effect.").

Danna protests that there are other explanations for the missing money: Hood (the Dairy Queen cashier) or Nathaniel (Danna's son) could have taken it;[2] or the money might not have existed in the first place. We agree that these are possibilities. But as we have often said, "[p]robable cause does not require certainty." *E.g.*, *United States v. Roberts*, 612 F.3d 306, 312 (5th Cir. 2010) (quoting *United States v. Waldrop*, 404 F.3d 365, 369 (5th Cir. 2005)); *see also Wesby*, 138 S. Ct. at 586. In any event, Danna overstates the strength of the evidence available to the defendants at the time of her arrest to support her alternative theories. The undisputed evidence shows that Hood behaved consistently with someone making a good-faith attempt to return the wallet to its owner. Upon receiving the wallet, she called Norman to ask what to do with it. Norman told her to put the wallet in the safe. Hood can be seen on video following Norman's directions. All told, her behavior on the video is decidedly less suspicious than Danna's. Danna's main piece of evidence against Hood is that Hood has a prior conviction for felony theft. Even assuming this

---

[2] Danna also suggests that Williams, Smith's friend who retrieved his wallet, or Miranda Slavoff, another Dairy Queen employee, could have taken the money. Both theories can be rejected out of hand. Hood told Purgerson there was no money in the wallet when she received it; Hood would only have a motive to lie about this if *she* took the money. Therefore, Purgerson could have reasonably concluded that no one who handled the wallet after Hood took the money.

information was readily available to the defendants, it could not have undermined the video evidence, which revealed Danna as the more suspicious party.

There is also little to suggest that Nathaniel took the money—or at least that he did so without acting in concert with Danna. He is seen on the video handling the wallet and appears to take pictures of it at one point, but, unlike Danna, he remains in the camera's view while handling the wallet. Of the three plausible suspects, Danna's actions raised the most alarms.

Danna also points to evidence that Smith had problems with his memory, suggesting that Smith was mistaken about whether there was $153 in his wallet when it went missing. But again, Danna points to no evidence beyond Smith's advanced age that Purgerson had any reason to suspect Smith's memory was unreliable. On the contrary, Purgerson swore in an affidavit that he "saw nothing to suggest that [Smith] was impaired or suffered from any mental or physical problem that would prevent him from accurately communicating with [Purgerson] or from understanding what had occurred." Nor did Smith's delay in reporting the missing money undercut the defendants' probable-cause determination because Smith gave Purgerson a perfectly reasonable explanation for the delay: he did not report it sooner because he did not know Dairy Queen had surveillance footage of the incident. Accordingly, the defendants acted reasonably in crediting Smith's allegations that $153 went missing from his wallet.

In sum, based on the evidence available to the defendants at the time of Danna's arrest, they had probable cause (and reasonable cause) to believe she stole $153 from Smith's wallet. The alternative explanations for the missing money do not change that result. Therefore, we affirm the district court's order granting summary judgment on Danna's § 1983 and state-law false-arrest claims.

No. 18-30695

**B.**

We next address Danna's malicious-prosecution claims. We start first with her Fourth Amendment malicious-prosecution claim. Then we turn to her state-law malicious prosecution claim.

We have held "that no [] freestanding constitutional right to be free from malicious prosecution exists." *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003) (en banc); *see also Albright v. Oliver*, 510 U.S. 266, 271 (1994) (plurality opinion) (holding that there is no "substantive due process right to be free of prosecution without probable cause"). Accordingly, a constitutional malicious-prosecution claim must be grounded in some rights deprivation separate from the prosecution itself—pretrial detention, for example. *See Castellano*, 352 F.3d at 953-54, 959. Danna neither alleges nor produces evidence that she was held in pretrial detention or deprived of some other federally protected right during the pendency of her prosecution.

Danna relies heavily on our recent opinion in *Winfrey v. Rogers*, 901 F.3d 483 (5th Cir. 2018). In that case, we remanded for trial a plaintiff's claims that the defendant made material false statements in his affidavit in support of the plaintiff's arrest warrant. *Id.* at 498. Danna compared *Winfrey* to this case because she alleges that Purgerson omitted certain exculpatory information in an affidavit supporting her charges. This comparison is inapt; we specified in *Winfrey* that the plaintiff's claim was grounded in his arrest and pretrial detention—not the prosecution itself. *Id.* at 491-92. Purgerson filed his affidavit *after* Danna's arrest, and, as explained above, Danna was not held in pretrial detention. To the extent Danna otherwise seeks to ground her malicious-prosecution claim in her arrest, it is identical to her false-arrest claim that we reject above. Accordingly, Danna's constitutional malicious prosecution claim fails.

7

No. 18-30695

Danna's state-law malicious-prosecution claim fares no better. To succeed on a malicious-prosecution claim under Louisiana law, a plaintiff must show:

> (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff.

*Lemoine v. Wolfe*, 168 So. 3d 362, 367 (La. 2015) (quoting *Jones v. Soileau*, 448 So. 2d 1268, 1271 (La. 1984)). Here again, the presence of probable cause to charge Danna with theft dooms her claim.[3] Therefore, we affirm the district court's ordering granting summary judgment to the defendants on Danna's § 1983 and state-law malicious prosecution claims.[4]

---

[3] Danna asserts that, under Louisiana law, Danna's acquittal shifts the burden to the defendants to show they acted with probable cause. To support this argument, Danna pulls an egregiously misleading quote from a Louisiana Court of Appeals case. The quote Danna included in her opening brief states, "The law is well settled that, where one institutes against another a criminal prosecution and there is an acquittal, if the person who instigated the prosecution is to avoid liability for damages he must do so on the ground that he acted with probable cause and without malice." *Robinson v. Rhodes*, 300 So. 2d 249, 251 (La. Ct. App 2d Cir. 1974)). But this passage continues, in the very next sentence:

> *The burden however, is ordinarily upon plaintiff* to prove both malice and the absence of probable cause. But the authorities have firmly established the rule that where a committing magistrate, *without a trial*, has discharged the accused, or the prosecuting officer has dismissed the charge, or where a grand jury has returned a nobill, there is a presumption of want of probable cause with the result that, in a suit for malicious prosecution based on that discharge, the burden of showing that he acted on probable cause and without malice is upon the defendant.

*Id.* (emphases added). The full quote thus directly contradicts Danna's assertion that her acquittal—following a trial—shifts the burden of proof to the defendants. We remind Danna's counsel of his duty of candor to this court.

[4] Danna advances no argument on appeal that the district court erred in granting summary judgment to the defendants on her excessive force claims. We thus treat these claims as waived. *See, e.g.*, *Proctor & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004). Danna likewise does not challenge the district court's decision that Danna's claims

No. 18-30695

## III.

For the reasons stated above, we AFFIRM the judgment of the district court.

---

against the defendants in their official capacities must fail because Danna did not produce any evidence showing the Caddo Parish Sheriff's Office was culpable for the defendants' actions—though such claims would fail regardless absent any tort. And we similarly do not reach the defendants' qualified-immunity defense; having committed no tort, the defendants need no immunity.