# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 12-4038

———————————————

Monty Fagnan

*Plaintiff - Appellant*

v.

City of Lino Lakes, Minnesota; Timothy Noll, Lino Lakes Police Officer, in his individual capacity; Christopher Bragelan, Lino Lakes Police Sergeant, in his individual capacity; Mitchell Demars, Lino Lakes Police Investigator, in his individual capacity; William Hammes, Lino Lakes Police Officer, in his individual capacity; Tanya Tamm, Lino Lakes Police Officer, in her individual capacity; Adam Halverson, Lino Lakes Police Officer, in his individual capacity; Wayne Wegener, Lino Lakes Police Officer, in his individual capacity; Joel Martin, Lino Lakes Police Officer, in his individual capacity

*Defendants - Appellees*

——————————

Appeal from United States District Court
for the District of Minnesota - Minneapolis

——————————

Submitted: October 24, 2013
Filed: March 10, 2014

——————————

Before RILEY, Chief Judge, COLLOTON and KELLY, Circuit Judges.

——————————

KELLY, Circuit Judge.

After he was acquitted of state law charges related to possession of firearms, Monty Fagnan (Fagnan) brought suit under 42 U.S.C. § 1983 against the City of Lino Lakes and eight Lino Lakes police officers in their individual capacities. The district court[1] granted defendants' motion for summary judgment on all claims, and Fagnan now appeals the judgment only as to his Fourth Amendment claim against the police officers in their individual capacities. With jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

On February 25, 2007, Sandra Fagnan, Monty Fagnan's mother, called 911 to report a possible gas leak at her home in Lino Lakes, Minnesota. She and her husband Gary believed that the basement laundry room was the source of the leak. Monty Fagnan, who was living with them at the time, accompanied the first responders to the basement. While the firefighters searched for the leak in the laundry room, the police officers on the scene—Sergeant Bragelan[2] and Officer Noll—stayed in the basement living room, through which the firefighters had passed on the way to the laundry room. Sergeant Bragelan testified that "[i]t was somewhat dim but there was still plenty of light to see what you were doing" in the living room. State Court Trial Tr. at 360; Appellees' Appendix (App.) at 388. The officers began to converse with Fagnan about his extensive gun collection, which was displayed in upright glass cases along the living room wall next to the laundry room door. At one point, Officer Noll commented that the barrels of two of the guns looked shorter than eighteen inches, the minimum permissible length under Minnesota law. See Minn. Stat. Ann. § 609.67. Sergeant Bragelan testified that the guns in question were stored

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

[2]As did the district court, we spell Sergeant Bragelan's name thus for consistency with the caption, though the warrant affidavit spells it "Bragelman."

in the cases adjacent to the laundry room, "on the side closest to that laundry room door." State Court Trial Tr. at 302; App. at 330. After observing the guns' length and wondering if they had been sawed off, Sergeant Bragelan used his flashlight to illuminate more clearly the ends of the barrels. He noticed that the gun barrels appeared jagged, as if they had been cut. Fagnan stated that the guns were legal and had been bought from a licensed dealer. All emergency personnel, including the police officers, left after the firefighters found no gas leak.

Sergeant Bragelan and Officer Noll subsequently investigated their suspicions about two of Fagnan's guns by comparing their memories of those guns to the lengths of similar guns in the police department armory. They then submitted reports of their concerns about Fagnan's guns to city investigators, including defendant Mitchell Demars, who prepared a detailed application for a warrant to search Monty Fagnan's home. An Assistant Anoka County Attorney reviewed the warrant application, and Anoka County Judge John Hoffman authorized the search warrant. In executing the warrant, city police officers seized two shotguns (whose barrels were measured by three different officers at a length of 15.5 inches), a hacksaw, and a rifle. Fagnan was arrested and charged with two counts of felony possession of a short-barreled shotgun. After his arrest, Anoka County Judge Daniel Kammeyer issued a search warrant for an airport hangar registered to Fagnan, but no contraband was found there.

The Minnesota court conducted omnibus hearings on evidentiary issues and declined to suppress evidence from the search. After Fagnan pled not guilty and was acquitted after trial on both counts, he brought several claims at the district court under § 1983. The only issues on appeal are whether the search of his house and seizure of his guns violated the Fourth Amendment and whether the officers had

probable cause to arrest Fagnan.[3]  The defendants assert they are entitled to qualified immunity because Fagnan's constitutional rights were not violated.

## II. Discussion

When the district court has granted a summary judgment motion, we review the court's legal conclusions de novo and its fact findings for clear error, considering the evidence in the light most favorable to the nonmoving party.  Morris v. City of Chillicothe, 512 F.3d 1013, 1018 (8th Cir. 2008).  The existence of probable cause is a mixed question of law and fact, which we review de novo.  United States v. Brown, 461 F.3d 1062, 1072 (8th Cir. 2006).  Granting summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When the defense of qualified immunity has been asserted, we evaluate (1) whether defendants violated plaintiff's constitutional rights and (2) whether those rights were clearly established.  Chambers v. Pennycook, 641 F.3d 898, 904 (8th Cir. 2011).  If we find that no constitutional violation occurred, however, our evaluation may end there.  See Crumley v. City of St. Paul, 324 F.3d 1003, 1008 (8th Cir. 2003).

First, Fagnan argues that the Lino Lakes police officers violated his constitutional rights when they conducted an illegal search of his home.  The Fagnans consented to the Lino Lakes officers' entry into their home, and Monty Fagnan personally escorted the officers to the basement.  Nevertheless, Fagnan asserts that Sergeant Bragelan and Officer Noll exceeded the scope of that consent when they stood near the laundry room, talking with him about his gun collection.  In essence,

---

[3]Fagnan also raises in passing a Fifth Amendment claim based on his conversation with the officers at his house.  This claim was not raised in the district court, and we will not address it now.  See Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004) (citing "our general rule that claims not presented in the district court may not be advanced for the first time on appeal").

Fagnan asserts the police officers were not lawfully in the place from which they viewed the guns.

The officers did not exceed the scope of Fagnan's consent for them to be in the basement. "The standard for measuring the scope of a [person's] consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" United States v. McMullin, 576 F.3d 810, 815 (8th Cir. 2009) (quotation omitted). Here, the officers had to walk though the basement living room to access the laundry room—the suspected location of the gas leak; the officers stayed near the laundry room door; and the sawed-off guns were located in a glass-walled cabinet adjacent to that door. A typical, reasonable person would understand the officers had permission to remain near the location of the problem that brought them to the house in the first place. Thus, the officers were lawfully in the basement when they saw, in plain view, the guns they suspected were unlawfully short. See United States v. Bustos-Torres, 396 F.3d 935, 944 (8th Cir. 2005) (The Fourth Amendment permits "an officer, without a warrant, [to] seize an object in plain view provided the officer is lawfully in the position from which he or she views the object, the object's incriminating character is immediately apparent, and the officer has a lawful right to access the object.") (citing Minnesota v. Dickerson, 508 U.S. 366, 375 (1993)).

Second, Fagnan argues that the warrant in this case was issued, and executed, without probable cause. The officers noticed that two guns in Fagnan's cabinet looked too short. The requirement that the guns' "incriminating nature" be "immediately apparent" does not mean an officer must know the items are contraband. United States v. Garner, 907 F.2d 60, 62 (8th Cir. 1990). Rather, the officer needs only "'probable cause to associate the property with criminal activity.'" Id. (quoting Texas v. Brown, 460 U.S. 730, 741–42 (1983)). "Probable cause demands . . . only that the facts available to a reasonably cautious [person] would warrant a belief 'that certain items may be contraband' . . . ." Id. Although the

basement lighting was somewhat dim, Officer Noll and Sergeant Bragelan both saw the odd length of the guns even without the aid of a flashlight. Moreover, Fagnan admits in his appellate brief that he told the officers "that there were two sawed off shotguns that were used by sports[men] practicing for competition." Appellant Br. at 20.

A warrant application and affidavit demonstrate probable cause if they "describe circumstances showing a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Keele, 589 F.3d 940, 943 (8th Cir. 2009) (quotation omitted). The affidavit in support of the warrant to search the Fagnan home included several details from the officers' observations: "Officer Noll, who was standing by, observed two shotguns that were contained in these glass front cabinets [and] appeared to be of illegal barrel length. . . . Officer Noll observed the shotguns had standard magazine tubes that hold four 2 3/4 or 3 inch rounds and that the barrels were cut off just above the magazine tubes." App. at 940. The affidavit further stated that Sergeant Bragelan and Officer Noll "from measuring department shotguns determined that the two they observed at Fagnan's residence were of illegal barrel length." Id. Finally, the affidavit was specific as to what was sought: "[s]hort barreled 'sawed off' shotguns . . . and any other illegally modified or altered firearms," "[m]anuals . . . for weapon modification/alteration," "tools for altering firearms" and "items to show constructive possession of the above items." Id. at 939. Such details adequately show that the warrant was supported by probable cause.[4]

---

[4]To the extent Fagnan has preserved his malicious prosecution claim on appeal, our finding that the police had probable cause to conduct the search defeats it. See Harrington v. City of Council Bluffs, Iowa, 678 F.3d 676, 679–80 (8th Cir. 2012) ("Sufficient probable cause would defeat the appellees' § 1983 claims based on malicious prosecution . . . .").

To the extent that Fagnan also argues the warrant affidavit was based on misrepresented facts, we agree with the district court that the record does not reflect the "'deliberate falsehood' or 'reckless disregard for the truth' [that] violates the Fourth Amendment." Bagby v. Brondhaver, 98 F.3d 1096, 1098 (8th Cir. 1996) (quoting Franks v. Delaware, 438 U.S. 154, 171 (1978)) (describing standard for imposing § 1983 liability on police officers). "Truthful in this context means that the information put forth is 'believed or appropriately accepted by the affiant as true.'" Morris v. Lanpher, 563 F.3d 399, 402 (8th Cir. 2009) (quoting Franks, 438 U.S. at 165). In response to a motion for summary judgment on the ground of qualified immunity, Fagnan "may not respond simply with general attacks upon the defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his . . . burden of proving the pertinent motive." Id. at 403 (quotation omitted). Since Fagnan has made no such demonstration, the district court properly granted summary judgment on this issue as well.[5]

Finally, Fagnan argues that the officers lacked probable cause to arrest him on the state gun charges. At the time, the officers had a warrant to search the house but not to arrest him. "'Probable cause to conduct a warrantless arrest exists when at the

[5]To the extent that Fagnan preserved for appeal his abuse of process claim, we decline to decide whether defendants may be liable for abuse of process pursuant to 42 U.S.C. § 1983. See Santiago v. Fenton, 891 F.2d 373, 388 (1st Cir. 1989). Whether we may evaluate such a claim pursuant to § 1983 (as Fagnan alleges in his complaint) or under state law, however, he would need to show that the officers subjectively had an "ulterior purpose." See Voyticky v. Vill. of Timberlake, 412 F.3d 669, 676–77 (6th Cir. 2005) (If an abuse of process claim is "cognizable as a federal constitutional claim . . . the elements necessary to prove it would likely mirror those of state law.") (citing Cook v. Sheldon, 41 F.3d 73, 79–80 (2d Cir. 1994)); Bigelow v. Galway, 281 N.W.2d 835, 837 (Minn. 1978) (first element of abuse of process claim is "the existence of an ulterior purpose") (citing Hoppe v. Klapperich, 28 N.W.2d 780, 786 (Minn. 1947) (establishing elements in abuse of criminal process case)). This he has failed to do.

moment of arrest police have knowledge of facts and circumstances grounded in reasonably trustworthy information sufficient to warrant a belief by a prudent person that an offense has been or is being committed by the person to be arrested.'" Frison v. Zebro, 339 F.3d 994, 997 (8th Cir. 2003) (quoting United States v. Hartje, 251 F.3d 771, 775 (8th Cir. 2001)). Fagnan was arrested after officers executed a valid search warrant for illegally shortened guns at the home where he was living. During the search, officers found two shortened firearms in a display case full of Fagnan's guns and trophies. See id. (officers had probable cause to arrest plaintiff after they executed a valid search warrant, finding evidence both of criminal activity and of plaintiff's connection to the location, rendering summary judgment for defendants in § 1983 case appropriate). Fagnan's arrest was supported by probable cause and did not violate his Fourth Amendment rights.

Defendants argue that Fagnan is collaterally estopped from bringing these constitutional claims against them at all. More specifically, defendants assert that because Fagnan did not prevail on his Fourth Amendment-based motion to suppress in state court, he may not relitigate those claims against them in this forum. See Crumley, 324 F.3d at 1006 ("This court gives a state court judgment the same preclusive effect it would be given under the law of the state in which it was rendered.") (citations omitted). Because we agree with the district court that the Lino Lakes police officers' conduct did not violate Monty Fagnan's constitutional rights, we, too, decline to address this argument.

## III. Conclusion

We affirm the district court's grant of summary judgment in favor of the Lino Lakes police officers.

_____