# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

August 7, 2020

Lyle W. Cayce
Clerk

No. 18-40491

COURTNEY MORGAN,

>  Plaintiff – Appellee,

v.

MARY CHAPMAN; JOHN KOPACZ,

>  Defendants – Appellants.

—————

Appeal from the United States District Court
for the Southern District of Texas

—————

Before ELROD, WILLETT, and DUNCAN, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

This is another in a long line of cases involving the Texas Medical Board serving *instanter* subpoenas on medical clinics. We have said that those subpoenas—which do not allow for court review and demand immediate compliance—are unconstitutional.

In this case, a team of law enforcement officers and Medical Board investigators locked down a clinic, rifled through private patient records, and seized confidential files. Courtney Morgan alleges that Mary Chapman, a Medical Board investigator, used those illegally-obtained files to fabricate evidence and get him indicted on trumped-up charges of running a pill mill. A

No. 18-40491

state district court largely agreed with that version of the facts, suppressing the illegally obtained evidence, and dismissing the indictment against Morgan. Now, Morgan brings a civil suit against two government agents for violating his constitutional rights.

In this case, Morgan contends that Chapman and John Kopacz used *instanter* subpoenas to illegally search his clinic (which did not dispense pain medication), resulting in the illegal seizure of property and patient records. This is not the first time this court has addressed these subpoenas. In *Zadeh v. Robinson*, the Board executed an unconstitutional *instanter* subpoena on an internal medicine doctor. 928 F.3d 457, 462 (5th Cir. 2019), *cert denied* 2020 WL 3146691 (June 15, 2020). And in *Cotropia v. Chapman*, another doctor alleged that Chapman showed up with an unconstitutional *instanter* subpoena and, over the receptionist's objection, removed and copied sensitive documents from the office's front desk. 721 Fed. App'x 354, 356 (5th Cir. 2018).

The district court denied qualified immunity to both defendants and rejected Chapman's assertion of absolute prosecutorial immunity. It held that Morgan stated a claim for the purported constitutional tort of malicious prosecution against Kopacz and Chapman, and stated a claim for "constitutional" abuse of process against Chapman. We reverse because malicious prosecution and abuse of process are not viable theories of constitutional injury. But we remand for the district court to decide whether Morgan has waived his Fourth Amendment claims and whether he should be allowed to amend his complaint a third time to add a due process claim.

No. 18-40491

## I.

Dr. Courtney Morgan is a licensed physician in Victoria, TX.[1]  Since 2007, he has owned and operated two medical clinics: Hop Medical Services and Drive Thru Doc.  Hop Medical focuses on general family medicine, while Drive Thru focuses only on simple medical issues that can be treated in thirty days.    Such ailments include rashes, toothaches, sexually transmitted diseases, and strep throat.  Drive Thru provides these services at a discounted rate in order to help uninsured patients.

Morgan states that he has never stored, retained, or dispensed any controlled substance at either clinic.  But on July 18, 2013, law enforcement descended to search for evidence of illegal controlled-substance related activity.  Mary Chapman, an investigator for the Texas Medical Board, and John Kopacz, an agent with the Texas Department of Public Safety, along with two additional Medical Board agents, two Drug Enforcement Administration agents, and a local Victoria, TX, police officer, served administrative *instanter* subpoenas on Morgan, searched his clinics, and seized medical files.  Chapman and Kopacz confined Morgan in an examination room, prevented his employees from communicating with each other, and collected all of their cell phones.  Chapman and Kopacz seized confidential documents, including all patient medical records for March 2013, as well as additional documents that were not listed in the subpoenas.

Things would get worse for Morgan.  As he tells it, Chapman fabricated evidence to encourage a baseless criminal prosecution.  In Texas, a clinic that prescribes four specific types of controlled substances to greater than half of its patients on a monthly basis must obtain a pain management clinic

---

[1] All facts are drawn from Morgan's Second Amended Complaint, which, at the motion to dismiss stage, we take as true.  *See Cherry Knoll, L.L.C. v. Jones*, 922 F.3d 309, 311 (5th Cir. 2019).

3

certification. Chapman made a report that included *all* patients who received prescriptions for *any* controlled substance, knowing that this was deceptive. Based on that fabricated report, Kopacz suggested to the district attorney that Morgan be charged with operating an unlicensed pain management clinic. A grand jury indicted Morgan based solely on the fabricated report, and he was arrested for the third-degree felony of non-certification of a pain management clinic.

## A.

The state court made quick work of the prosecution. On September 3, 2015, Chapman testified on Morgan's motion to suppress. This testimony, Morgan says, revealed startling new information: (1) Chapman and Kopacz coordinated extensively with each other prior to serving the TMB administrative *instanter* subpoenas; (2) Chapman's fabricated report was the sole evidence used to support Morgan's indictment; and (3) Chapman and Kopacz worked together to encourage the prosecution that rested on the fabricated report.

The state district court held a suppression hearing, where it heard testimony from Chapman and Kopacz. The court found that the Medical Board and DPS communicated for the purpose of charging Morgan with a crime, that there was "an unusual show of force by law enforcement to merely serve subpoena(s)," and that Chapman's evasive testimony was "less than credible." The court granted Morgan's motion to suppress, holding that Chapman and Kopacz conducted a warrantless search and seizure at Morgan's clinics.

The court applied *New York v. Burger*, which held that an administrative subpoena is only reasonable if there is a substantial government interest implicating the regulatory scheme, the search is necessary to further that scheme, and the subpoena provides an adequate substitute for a warrant. 482 U.S. 691, 702–03 (1987). There was a substantial interest in the regulatory

scheme, the court concluded, but the search violated the Fourth Amendment because "the intent behind the search . . . was to pursue criminal charges." The subpoena did not provide an adequate substitute for a warrant, the court explained, because it did not provide Morgan an opportunity for pre-enforcement judicial review, and that neither the consent nor exigent circumstances exceptions to the warrant requirement applied. The court granted the motion to suppress and dismissed the indictment on January 20, 2016.

On July 11, 2016, Morgan learned that Chapman deliberately inflated the numbers in her report in order to encourage his prosecution. He also asserts that Chapman deliberately excluded evidence that would show his exemption from pain-management certification requirements.

B.

Morgan filed this lawsuit on January 20, 2017 in the Southern District of Texas. His first complaint alleged claims under 42 U.S.C. § 1983—for malicious prosecution and violations of the Fourth Amendment—as well as a state-law malicious-prosecution claim and violation of Article I § 9 of the Texas Constitution.

After the defendants filed motions to dismiss, Morgan amended his complaint. This new complaint dropped most of his claims, leaving only individual-capacity claims against Kopacz and Chapman for malicious prosecution under 42 U.S.C. § 1983. The First Amended Complaint added a Fourth Amendment claim. Chapman and Kopacz again responded with motions to dismiss. At a subsequent hearing, the district court granted Morgan leave to file a second amended complaint, mooting the previous filings.

The Second Amended Complaint is before us today. It alleges that Chapman "compiled an investigative report from the seized medical records obtained during the warrantless search," which used "deliberately inaccurate

No. 18-40491

calculations [to] falsely inflate[] the percentage of prescriptions issued by Morgan"; that Kopacz "received the entire investigative file from the [Texas Medical Board]," and that the report "was the sole evidence relied upon in Kopacz's decision to cause the criminal prosecution of Morgan through the Victoria County District Attorney's Office."

The Second Amended Complaint asserts three claims, all brought under 42 U.S.C. § 1983: Count I, for malicious prosecution against Kopacz; Count II for malicious prosecution against Chapman; and Count III, for abuse of process against Chapman.

Kopacz and Chapman each moved to dismiss. Kopacz's motion raised the defense of qualified immunity and argued that there is no constitutional right to be free from malicious prosecution. It also noted that any freestanding Fourth Amendment claim alleged in the complaint would be time-barred. Chapman's motion to dismiss asserted defenses of absolute immunity, qualified immunity, and failure to state a claim. The motion also asserted that the abuse-of-process claim was time-barred.

The district court denied both motions. The court briefly summarized the alleged facts, described the claims and defenses, and stated the Rule 12(b)(6) standard. Then, the district court copied the state court's suppression order verbatim, entailing four-and-a-half of the order's nine pages. The district court concluded that defendants were not entitled to qualified immunity because the defendants' "conduct presumably violated clearly established state and federal law."

## II.

Because the district court's denial of the motion to dismiss included a rejection of qualified immunity, it is immediately appealable. *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). We therefore have jurisdiction under 28 U.S.C. § 1291. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). We

No. 18-40491

review the denial of a motion to dismiss *de novo.  Lincoln v. Barnes*, 855 F.3d 297, 301 (5th Cir. 2017).

## III.

We begin with Chapman's assertion of absolute prosecutorial immunity.

"A prosecutor is absolutely immune when she acts in her role as an advocate for the state by initiating and pursuing prosecution." *Beck v. Tex. State Bd. of Dental Examiners*, 204 F.3d 629, 637 (5th Cir. 2000) (citing *Burns v. Reed*, 500 U.S. 478, 491 (1991)).  Absolute immunity shields prosecutors even when they initiate prosecution maliciously, wantonly, or negligently.  *Rykers v. Alford*, 832 F.2d 895, 897 (5th Cir. 1987).

Chapman, of course, was not a prosecutor—she was a Medical Board investigator.  But we approach absolute immunity functionally, looking to the nature of the acts and not the title of the actor.  *See Beck*, 204 F.3d at 634.  The question is whether the person was performing an investigative function.  *Singleton v. Cannizzaro*, 956 F.3d 773, 780 (5th Cir. 2020).  Where a person acts as a detective, "searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested," he is not entitled to prosecutorial immunity.  *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).  But where a person acts as an advocate, "evaluating evidence and interviewing witnesses as he prepares for trial," then the immunity does attach.  *See id.*

Actions performed before probable cause has been established are typically investigative; those after, prosecutorial.  *See Cousin v. Small*, 325 F.3d 627, 633 (5th Cir. 2003).  This is because "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested."  *Buckley*, 509 U.S. at 274; *see also id.* at 274 n.5 ("Of course, a determination of probable cause does not guarantee a prosecutor absolute immunity from liability for all actions taken afterwards.").  .

Here, Chapman acted as an investigator both when she searched Morgan's office and when she allegedly fabricated a report based on that search. Searching a crime scene for evidence of wrongdoing is perhaps the quintessential investigative function. *See id.* (observing that a prosecutor is not entitled to immunity when he "plans and executes a raid on a suspected weapons cache"). Thus, Chapman is not entitled to absolute immunity for the search of Morgan's clinic and the seizures of his records. Nor is she entitled to absolute immunity for allegedly compiling an inaccurate report by knowingly misrepresenting the proportion of Morgan's patients who received designated prescriptions. That report was the sole piece of evidence that established probable cause for Morgan's indictment. Absolute immunity does not apply where an "official's function was to obtain evidence prior to indictment." *See Hoog-Watson v. Guadalupe County*, 591 F.3d 431, 438 (5th Cir. 2009) (quoting *Burge v. Par. of St. Tammany*, 187 F.3d 452, 478 (5th Cir. 1999) (alteration omitted)).

Because Chapman "fulfilled the fact-finding role generally filled by law enforcement," she is entitled only to "the level of immunity available to law enforcement—qualified immunity." *Wooten v. Roach*, 964 F.3d 395, 408 (5th Cir. 2020).

## IV.

We turn next to the qualified immunity inquiry. Morgan's Second Amended Complaint alleges counts of malicious prosecution against defendants Kopacz and Chapman, purportedly cognizable under 42 U.S.C. § 1983, and a claim of abuse of process against Chapman that he also brings under 42 U.S.C. § 1983. We agree with defendants that malicious prosecution and abuse of process are torts, not constitutional violations. The facts underlying these tort allegations may *constitute* unconstitutional searches, seizures, or violations of due process. But that does not convert the common

law tort into a violation of the Constitution.  Accordingly, we hold that defendants are entitled to qualified immunity against those claims.

The Fourth Amendment of the United States Constitution promises that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV.  The Fourteenth Amendment ensures that the same protection runs against state officials.  *Dunaway v. New York*, 442 U.S. 200, 207 (1979).

Morgan brings his claims under 42 U.S.C. § 1983, which provides a cause of action against persons who, under color of state law, deprive him "of any rights, privileges, or immunities secured by the Constitution."  To defeat the defense of qualified immunity at the motion to dismiss stage, Morgan must plausibly allege a violation of a constitutional right that was clearly established at the time of the purported violation.  *Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 264 (5th Cir. 2019).

A.

We begin with Morgan's claims for "malicious prosecution . . . cognizable under 42 U.S.C. § 1983" against Chapman and Kopacz.  Under the common law of Texas, malicious prosecution is "a cause of action for those subjected unjustifiably to criminal proceedings."  *Kroger Texas Ltd. v. Suberu*, 216 S.W.3d 788, 792 (Tex. 2006).  To state a claim for that state tort, a plaintiff must allege

> (1) a criminal prosecution was commenced against [him]; (2) [the defendant] initiated or procured that prosecution; (3) the prosecution terminated in [the plaintiff's] favor; (4) [he] was innocent of the charges; (5) [the defendant] lacked probable cause to initiate the prosecution; (6) [the defendant] acted with malice; and (7) [the plaintiff] suffered damages.

No. 18-40491

*Id.* at 792 n.3. This circuit used to recognize an analogous *constitutional* right to be free from malicious prosecution. *See Gordy v. Burns*, 294 F.3d 722 (5th Cir. 2002). Today, it does not.[2]

In *Castellano v. Fragozo*, an *en banc* majority of this court extinguished the constitutional malicious-prosecution theory. 352 F.3d 939, 954 (5th Cir. 2003) (en banc). *Castellano* explained that claims under § 1983 are only "for violation[s] of rights locatable in constitutional text." *Id.* at 953–54. This makes sense: the people have a constitutional right to be free from unreasonable searches and unreasonable seizures. In so far as the defendant's bad actions (that happen to correspond to the tort of malicious prosecution) result in an unreasonable search or seizure, those claims may be asserted under § 1983 as violations of the Fourth Amendment. But that makes them Fourth Amendment claims cognizable under § 1983, not malicious prosecution claims.

There is a constitutional right to be free of unreasonable searches and seizures. There is no constitutional right to be free from malicious prosecution. Therefore, qualified immunity bars Morgan's § 1983 malicious prosecution claims against Chapman and Kopacz.

B.

We turn to Morgan's § 1983 claim for abuse of process against Chapman. The essential elements of the state law tort of abuse of process are "first, an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding." *Brown v. Edwards*, 721 F.2d 1442, 1455 (5th Cir. 1984) (emphasis omitted) (quoting Prosser, The Law of Torts 841 (4th ed. 1971)); *cf. Hunt v. Baldwin*, 68 S.W.3d 117, 129 (Tex. App.—

---

[2] When this court did recognize such a claim, the rule was "that the elements of the state-law tort of malicious prosecution and the elements of the constitutional tort of 'Fourth Amendment malicious prosecution' are coextensive." *See Gordy*, 294 F.3d at 725.

10

No. 18-40491

Houston [14th Dist.] 2001, no pet.) (identifying improper use of process, ulterior motive, and damage to plaintiff as necessary elements).

This court has never identified the elements of the *constitutional* tort of abuse of process.[3] It is doubtful that such a constitutional tort has ever existed in this circuit. Forty years ago, we suggested that "misuse of legal procedure may be so egregious as to constitute a violation of Section 1983 . . . if the tort-feasor, under color of state law, subjects the tort-victim to a deprivation of Constitutional dimension." *Beker Phosphate Corp. v. Muirhead*, 581 F.2d 1187, 1189 (5th Cir. 1978); *see also id.* at 1188 n.1 (defining "[m]isuse of legal procedure" as "a general term describing at least three separate but related common law torts which protect the interest in freedom from unjustified litigation: (1) malicious prosecution; (2) wrongful civil proceedings; (3) abuse of process" (internal quotation omitted)). But *Beker* also emphasized that "conduct which merely engenders common law tort liability*, without infringing on Constitutionally protected interests*, is not a sufficient basis to support a cause of action under Section 1983." *Id.* (emphasis added). In other words, the conduct that can state a claim for the tort of abuse of process may also state a claim under § 1983, *if that conduct infringes a constitutional right.*

In the forty years since *Beker*, this court has never identified a "constitutional" abuse of process, and we have questioned the viability of the abuse-of-process-as-constitutional-tort theory. *Cf. Brummett v. Camble*, 946 F.2d 1178, 1181 n.2 (5th Cir. 1991) ("Not long ago, however, our court had held that torts of abuse of process . . . were not encompassed within § 1983.").

---

[3] The court looked to state tort law as an analogy, concluding that if the constitutional tort of abuse of process exists, it must consist of the state law tort plus something more, which this court suggested would be an act that resulted in "a deprivation of Constitutional dimension." *See Beker Phosphate Corp. v. Muirhead*, 581 F.2d 1187, 1189 (5th Cir. 1978).

11

No. 18-40491

Morgan suggests that *Brown* established the constitutional right to be free from abuse of process. It did not. *Brown* involved a man who had been arrested by a police officer who, under state law, received ten dollars for each charge that resulted in conviction. *Id.* at 1444. The plaintiff "analogize[d] his claim to one based on abuse of process." *Id.* at 1450. The court rejected the theory that abuse of process by a government official is necessarily a denial of due process. *See id.* at 1455 (distinguishing *Jennings v. Shuman*, 567 F.2d 1213, 1220 (3d Cir.1977)).[4] Instead, the court's reasoning aligned with the rule of *Beker*: *if* the constitutional tort of abuse of process exists, it must involve the state tort plus a deprivation of a constitutionally protected interest. *Cf. Beker*, 581 F.2d at 1189. Thus, a constitutional violation is still the *sine qua non* of the abuse of process theory.

The conduct in *Brown* did not even satisfy the state tort of abuse of process, much less "infring[e] on a constitutionally protected interest." *Cf. Beker*, 581 F.2d at 1189.[5] *Brown* did not create a constitutional right to be free from abuse of process. And that is why the only time we have cited *Brown* in a putative constitutional-abuse-of-process case was to dispel the idea that it created such a right. *See Whatley v. Philo*, 817 F.2d 19, 22 (5th Cir. 1987) (citing *Brown*, 721 F.2d at 1454).

---

[4] Some circuits recognize abuse of process as a violation of procedural due process. *See, e.g., Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994); *Jennings*, 567 F.2d at 1220. Other circuits are more circumspect. *See, e.g., Hart v. Mannina*, 798 F.3d 578, 595 (7th Cir. 2015) ("[A]ssuming for purposes of argument that a claim for abuse of process might be cognizable under § 1983" as a violation of the Fourth or Fourteenth Amendment.); *Fagnan v. City of Lino Lakes*, 745 F.3d 318, 324 n.5 (8th Cir. 2014) ("To the extent that Fagnan preserved for appeal his abuse of process claim, we decline to decide whether defendants may be liable for abuse of process pursuant to 42 U.S.C. § 1983.").

[5] Morgan maintains that *Brown* "outlined the elements for a federal claim of abuse of process." Not so. *Brown* provided the elements for common law abuse of process, which it analogized to the plaintiff's facts. *See id.* at 1455 (quoting Prosser, The Law of Torts 838–41 (4th ed. 1971)).

Our *en banc* decision in *Castellano* sheds light on the best way to understand *Beker* and *Brown*. *Castellano* clarifies that the same conduct may constitute both a state tort (which is not cognizable under § 1983) and a constitutional injury (which is). Section 1983 claims "are for violation[s] of rights locatable in constitutional text." 352 F.3d. at 953–54. Thus, in *Castellano* the conduct did not state a claim for malicious prosecution (because such a claim was not locatable in the constitutional text), *see id.*, but that same conduct *did* state a claim for a violation of the right to due process and the right to be free from unreasonable seizure, s*ee id.* at 955. Accordingly, it reversed the district court judgment and remanded for a new trial.

We recognize that previous decisions of this court may have left open the possibility that the freedom-from-abuse-of-process right lay hidden in the constitutional ether. *Cf. Whatley*, 817 F.2d at 22 ("At most, *Beker* supports the proposition that, to be actionable under § 1983, the misuse of legal process must be 'egregious.'" (quoting *Beker*, 581 F.2d at 1189)). We close the door on that possibility. Putting together *Beker*, *Brown*, and *Castellano*, we observe that facts that constitute the state tort of abuse of process can also constitute an unreasonable search, unreasonable seizure, or violation of another right "locatable in constitutional text." *Id.* at 954. Such claims, rooted in the violation of constitutional rights, are actionable under § 1983. But those claims "are not claims for [abuse of process] and labeling them as such only invites confusion." *See id.*

Because there is no constitutional right to be free from abuse of process, the district court erred by failing to grant defendants qualified immunity on that claim.

## V.

To save his complaint from dismissal, Morgan argues that his factual allegations state a claim for *something*, even if not malicious prosecution or

abuse of process.  In his words, "[w]hether this claim is called malicious prosecution or a violation of the Fourth Amendment or a violation of the Fourteenth Amendment . . . does not matter."  But it does matter:  while Morgan was silent about the possibility of a due process claim in the district court, defendants contend that he affirmatively *waived* a possible freestanding Fourth Amendment claim.

Morgan is correct that under our system of notice pleading, a complaint need not specify legal theories.  *See McManus v. Fleetwood Enters.*, 320 F.3d 545, 551 (5th Cir. 2003).  But that is not the only principle at play here. A defendant is also entitled to know the claims against him so that he can prepare a response.  Putting those principles together, we consider whether to remand for the district court to determine whether Morgan may amend his complaint.

A district court "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  But leave may be denied when it would cause undue delay, be the result of bad faith, represent the repeated failure to cure previous amendments, create undue prejudice, or be futile.  *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004).  Accordingly, we consider whether it would be futile for Morgan to add a due process, unreasonable search, or unreasonable seizure claim.[6]  If adding these claims would be futile on the merits, we will not remand for efficiency's sake.  After all, we are in as good of a position as the district court to consider this legal question; if these added-

---

[6] We do not discuss the other factors, which the district court is better positioned to address.  *Cf. Rutledge v. United States*, 161 F.3d 7 (5th Cir. 1998 (unpublished table op.) (declining to remand because "leave to amend would prove futile").  Of course, allowing a plaintiff the opportunity to seek leave to amend on remand is only proper in appropriate circumstances.  *See, e.g.*, *McLin v. Ard*, 611 F. App'x 806, 810 n.4 (5th Cir. 2015) (concluding that plaintiff should be given "opportunity to cure his complaint on remand" because district court mistakenly "found the complaint sufficient on its face to state a plausible claim for relief").

by-amendment claims would not succeed on the merits, why should we remand?  But, if these claims might have merit if added-on-amendment, we will remand to the district court for a full determination of whether leave to amend is proper.

## A.

A freestanding Fourth Amendment unreasonable search claim under these facts would look familiar.  This court has recently decided a number of cases involving the Texas Medical Board's unconstitutional use of *instanter* subpoenas.  In the unpublished *Cotropia v. Chapman,* we denied qualified immunity where Mary Chapman (the same investigator named in this case) searched and seized patient medical records over a physician's objection.  *See* 721 Fed. App'x 354, 357, 361 (5th Cir. 2018).  We held that the plaintiff plausibly alleged that Chapman "violated the clearly established right to an opportunity to obtain precompliance review of an administrative subpoena before a neutral decisionmaker." *Id.* at 357.

In a more recent published decision, we held that a TMB investigator violated a physician's Fourth Amendment rights by executing an *instanter* subpoena without precompliance review, even though we concluded that the investigator was entitled to qualified immunity.  *See Zadeh v. Robinson*, 928 F.3d 457, 464 (5th Cir. 2019).  The *Zadeh* defendants argued that the *instanter* subpoenas complied with the Fourth Amendment because they fell into the "closely regulated industry" exception to the general rule that administrative subpoenas require precompliance review.  *Id.* at 464.  We held that the medical industry as a whole is not a closely regulated industry.  *Id.* at 466.  But we assumed without deciding that pain management clinics were closely regulated and that the plaintiff was operating such a clinic.  *Id.*  We then held that the statutory scheme of the TMB's inspection authority lacked sufficient

limits on the discretion of the Board and was therefore not a proper substitute for a warrant. *Id.* at 468.

The *Zadeh* search violated the Fourth Amendment even if pain management clinics were a closely regulated industry, we explained. Nonetheless, we concluded that the law was not clearly established at the time, because "the defendants reasonably could have believed that the administrative scheme here provided a constitutionally adequate substitute for a warrant." *Id.* at 470.

The *Zadeh* court also concluded, under an alternative theory, that the searches at issue were not pretextual. *Id.* at 472. A search is not really administrative if it is used solely to find evidence of criminal wrongdoing. *See Burger*, 482 U.S. at 724 ("In the law of administrative searches, one principle emerges with unusual clarity and unanimous acceptance: the government may not use an administrative inspection scheme to search for criminal violations.").

Neither the closely regulated industry holding nor the pretextual search analysis would stop Morgan's claims. In *Zadeh,* the defendants received qualified immunity because the law of *instanter* searches of closely regulated pain management clinics was unclear. 928 F.3d at 466. Here, accepting the plaintiff's allegations as true, it is uncontroverted that Morgan was *not* operating a pain management clinic. Indeed, he alleges that he "has never obtained, stored, maintained or dispensed any controlled substances of any kind from either medical practice." Because Morgan was not operating a pain management clinic, the qualified immunity available to the defendants in *Zadeh* would be inapplicable here.

The pretext analysis in this case also departs from *Zadeh*. In *Zadeh*, we concluded that the searches were not pretext for criminal investigation because there was no evidence that the "investigation resulted in a criminal

prosecution" and because the TMB took "subsequent administrative action against" the physician. *Zadeh*, 928 F.3d at 471–72. Therefore, we reasoned, the search was not pretextual because it "was not performed 'solely to uncover evidence of criminality.'" *Id.* at 472 (quoting *Burger*, 482 U.S. at 698). Here, neither of those two facts are present. The search *did* result in a criminal prosecution, and TMB did *not* take any subsequent administrative action against Morgan.

Based on this case law, we cannot say it would be futile for Morgan to add a Fourth Amendment claim for an unreasonable search.

## B.

A Fourth Amendment unreasonable seizure claim arising from Morgan's arrest on false charges would also be familiar. We recently concluded that an unlawful seizure claim was cognizable and qualified immunity did not apply where a plaintiff "was wrongfully arrested due to the knowing or reckless misstatements and omissions" in a law enforcement officer's affidavits. *See Winfrey v. Rogers*, 901 F.3d 483, 492 (5th Cir. 2018), *cert denied sub nom. Johnson v. Winfrey*, 139 S. Ct. 1549 (2019). In that case, the plaintiff framed his claim as a "Fourth Amendment federal malicious-prosecution claim." *Id.* at 491. Relying on *Castellano*, we rejected that theory. *See id.* (citing *Castellano*, 352 F.3d at 945, 953). Nonetheless, we explained that where facts that follow the state tort of malicious prosecution also constitute an illegal seizure, a "claim fits the Fourth Amendment, and the Fourth Amendment fits the plaintiff's claim, as hand in glove." *Id.* at 492 (quoting *Manuel v. City of Joliet*, 137 S. Ct. 911, 917 (2017)) (alteration omitted).

*Winfrey* continued to analyze the statute of limitations issue, which is outside of the scope of this appeal. The court explained that the accrual date of a § 1983 action tracks the state law of torts. *Winfrey*, 901 F.3d at 492. The issue was whether the plaintiff's claim was more analogous to the tort of false

No. 18-40491

imprisonment (which accrues at the time the plaintiff is detained) or to malicious prosecution (which accrues when the prosecution ends). *Id.* We concluded that the claim was closer to malicious prosecution—"an unlawful arrest *pursuant* to a warrant[,] instead of a detention with no legal process." *Id.* at 493. We recognized this unconstitutional seizure claim even though we rejected the plaintiff's "constitutional" malicious-prosecution theory.

Accordingly, a Fourth Amendment unreasonable seizure claim would not be futile.

C.

We also must address whether it would be futile to remand to allow the district court to consider a due process claim. This court recently announced that there is a "due process right not to have police deliberately fabricate evidence and use it to frame and bring false charges against a person." *Cole v. Carson*, 802 F.3d 752, 771 (5th Cir. 2015) ("*Cole I*"), *cert. granted, judgment vacated sub nom. Hunter v. Cole*, 137 S. Ct. 497 (2016) *and opinion reinstated in part,* 935 F.3d 444 (5th Cir. 2018) (en banc). And, although *Cole* had a peripatetic procedural history, that holding is binding Fifth Circuit precedent today.[7]

Given the on-point *Cole* holding, the due process claim would similarly not represent a futile amendment. Remand to allow the district court to consider that claim would not be futile.

VI.

---

[7] *Cole I* was vacated by the Supreme Court in *Hunter v. Cole*, 137 S. Ct. 497 (2016). On remand from the Supreme Court, the panel in *Cole II* reinstated the portion of the opinion including its due process fabricated evidence theory. *See Cole v. Carson*, 905 F.3d 334, 347 (5th Cir. 2018) ("*Cole II*"), *reh'g en banc granted*, 915 F.3d 378 (5th Cir. 2019), *on reh'g en banc*, 935 F.3d 444 (5th Cir. 2019), *as revised* (Aug. 21, 2019). *Cole II* was vacated when this court granted rehearing en banc, 915 F.3d 378 (5th Cir. 2019), but the en banc court held "as in *Cole I* with respect to the Coles' three fabrication-of-evidence claims."

No. 18-40491

It would not be *futile* on the merits for Morgan to pursue an unreasonable search, unreasonable seizure, or due process claim. But the decision as to whether Morgan *should* be allowed to amend is not ours to make. It is unclear what legal theories the plaintiff presented in the district court. And his claims seem to have transformed on appeal. We remand for the district court to consider amendment and, if necessary, issues of waiver and forfeiture.[8]

* * * *

To sum up, Chapman is not entitled to absolute immunity. Under this circuit's precedents, there is no constitutional right to be free from abuse of process or malicious prosecution. As to search and seizure and due process, we remand to the district court to determine whether Morgan may amend his complaint a third time. The judgment of the district court is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

---

[8] In the district court, Morgan did not label his claim a due process claim. The three references to the Fourteenth Amendment in the Second Amended Complaint are in conjunction with the Fourth Amendment, clearly contemplating an incorporated reference to the latter. A complaint must "give the defendant fair notice of what the [plaintiff's] claim is." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Defendants had no notice of a due process claim. But the district court is in the best position to determine whether Morgan should be allowed to amend at this juncture. Likewise, defendants contend that Morgan waived any Fourth Amendment claim in his district court pleadings. Morgan maintains that defendants mischaracterized his claims. We leave that question for the district court.